**STATE of Missouri, Respondent,**

v.

**Thomas MAXIE, Appellant.**

**No. 57624.**

Supreme Court of Missouri,
Division No. 1.

July 22, 1974.

Motion for Rehearing or to Transfer to Court en Banc Denied Sept. 9, 1974.

John C. Danforth, Atty. Gen., David Robards, Asst. Atty. Gen., Jefferson City, for respondent.

Robert G. Burridge, St. Louis, for appellant.

BARDGETT, Presiding Judge.

Defendant Thomas Maxie appeals from a conviction of murder in the second degree, a felony, for which he was sentenced to twenty years' imprisonment. Notice of appeal was filed prior to January 1, 1972. This court has jurisdiction. Mo.Const. Art. V, Sec. 31(4), V.A.M.S.

Maxie was charged by indictment filed April 28, 1970, with murder in the first degree of Rose Schuh on March 26, 1970. Trial began on October 4, 1971, and on that date an information was substituted for the indictment. The substitute information alleged that the defendant feloniously, et cetera, assaulted Rose Schuh between the 26th and 30th day of March 1970, and that she died as a result thereof during that same period. The information also included, for the first time, certain fingerprint identification witnesses. Defense counsel stated that it was unfair to permit the state to change the dates set forth in the charging instrument some 18 months after the indictment was filed but sought no relief on that ground. Defense counsel strenuously objected to the en-dorsement of the fingerprint witnesses stating that he had just learned of the existence of an alleged fingerprint two weeks earlier; that the state knew of the fingerprint evidence for 18 months; that it is basically unfair to allow the state to endorse key witnesses for the first time some 18 months after the indictment was filed; that he first got the names of the new witnesses on the previous Friday (three days before trial); and that he did not have sufficient time to investigate or prepare his defense as to the fingerprint evidence, claiming surprise.

Defense counsel noted that the defendant was constitutionally entitled to a speedy trial and specifically refused to request a continuance of the case and he further objected to any continuance. The relief sought was an order refusing to permit the state to endorse or use the fingerprint witnesses —nothing more or less. The court overruled the objection to the endorsement and use of the additional witnesses and the trial proceeded.

 Defendant contends the court erred in allowing the state to change the dates in the charging instrument. Although defendant noted in the record that "it hardly seems fair, right or proper" to allow the state to change the dates when a defendant has formulated an alibi for the original date and is then confronted some 18 months later with different dates, there was no relief requested on this ground and defendant refused to request and objected to any continuance. The point is overruled, see discussion infra.

Error is claimed in the court's action in overruling defendant's objection to the endorsement and use of the fingerprint witnesses.

There is no question but what fingerprint evidence was essential to the state's case and, without these key witnesses, the state would have failed to make a submissible case, as will be seen infra. About two weeks before trial, defense counsel was informally informed that the state had

evidence of a fingerprint but, as noted supra, the state did not endorse witnesses who could testify as to fingerprints until the morning of the trial even though such evidence and the witnesses were known to the state for about 18 months.

■ The assistant prosecutor took the position that the state has the unrestricted absolute right to endorse witnesses anytime before trial. The prosecutor was incorrect. S.Ct. Rule 24.17, V.A.M.R.; State v. Lee, 491 S.W.2d 317, 323 (Mo. banc 1973). And for the future, see also S.Ct. Rule 25.-30, 29 J.Mo. Bar 554–560 (1973), effective July 1, 1974.

■ The trial court did not err in allowing the state to endorse the additional witnesses in this case. Most of the cases involving the late endorsement of witnesses also involve the trial court's refusal to grant a reasonable continuance so as to permit the defendant to investigate the new evidence and prepare a defense thereto. See annotation under S.Ct. Rule 24.17. In the instant case defense counsel categorically stated to the court that he did not want a continuance and would object to any continuance. Defendant's position seems to be that he was not required to consent to a continuance because to do so he would have to sacrifice his constitutional right to a speedy trial.

■ The court does not believe that a reasonable continuance would have deprived defendant of his constitutional right to a speedy trial. The refusal of any continuance of the trial places defendant in a position where he cannot complain of being put to trial. State v. Robinson, 263 Mo. 318, 324, 172 S.W. 598, 600(1) (1915). The point is overruled.

Defendant contends the evidence was not sufficient to support a conviction.

The evidence was sufficient to support findings that Henry and Rose Schuh were the only occupants of a four-family-apart-ment house at 1618 North 16th Street, St. Louis, Mo., living in a first-floor unit. On Monday, March 30, 1970, a letter carrier, who delivered mail to and knew Mr. and Mrs. Schuh, noticed that Saturday's mail (March 28th) was still in their mailbox and the rear door, near the mailbox, to their apartment was ajar. He had been asked to see if they were all right by another person in the neighborhood so he looked in and saw the body of Henry Schuh on the kitchen floor and the police were called. Officer Day arrived about 9:20 a. m. Mr. Schuh was on the kitchen floor dead and Rose Schuh was on the living room floor and also dead. There was dried blood all around. He identified photos taken at the scene, one of which showed the position of Rose Schuh's body as he found it with her skirt pulled up.

The middle room of the apartment was the bedroom in which there were a chiffo-robe with drawers and doors open and a clutter of various papers and debris scattered about. Among these papers was a small cardboard box top measuring $\frac{1}{2} \times 3 \times 6\frac{1}{2}$ inches. This box top, along with other items, was removed and kept by the police. Several prints were found on this box top, some smudged and some good prints. Fingerprint experts testified as to the manner used to lift and identify fingerprints. The left thumbprint of defendant was on the box top.

One Franklin Lindsey [1] was arrested on April 2, 1970, at about 11:00 a. m. and defendant Maxie was arrested the same day at about 4:00 p. m. On April 2, 1970, Detective Spavor located a baseball bat in the basement of a vacant house at 1611 North 16th Street, which was supposedly the weapon used to kill Henry and Rose Schuh.

Joseph Stevens, a criminologist with the St. Louis police department, whose duties included the scientific examination of physical evidence from crime scenes and whose qualifications are not questioned,

1. See State v. Lindsey, 507 S.W.2d 1 (Mo. banc 1974).

testified that he examined the baseball bat and the blood-stained, checkered plaid, flannel shirt worn by Rose Schuh at the police department laboratory. Several pieces of hair and glass were held to the bat by a red sticky substance. A thread of material was embedded under a splinter in the bat. A microscopic comparison was made between the thread found on the bat and threads taken from Rose Schuh's shirt. It revealed that the threads were of similar material; the colors were the same; the number of fibers in the thread were the same; and the degree of wear was the same. Although thousands of shirts would be made from the same bolt of cloth, the shade will alter with age, number of washings, conditions of storage—all of which the witness categorized as "the degree of wear". The degree of wear of the fibers from the bat and from the shirt was the same. The witness, over objection, testified that there is a "high probability" that the fibers came from the same shirt and that: "I feel from my own mind they did come from the same shirt. I cannot state with absolute certainty that they did." The bat was admitted in evidence over defense objection that it had not been connected to defendant nor with the crime.

An autopsy was performed on the body of Rose Schuh. It revealed a fracture of the left side of her lower jaw in two places; multiple lacerations of the scalp, one on the left side of the forehead, and about three on the back of her head varying in length from one to three inches; swelling of the brain and areas of contusion on the left side of her brain; congestion of the lungs with a large amount of blood present within the bronchial tree of both lungs. Death was due to cerebral concussion and contusion and fracture of the lower jaw with aspiration of blood into the lungs. The autopsy was done at 2:00 p. m. on March 30, 1970, and the doctor estimated Rose Schuh had died 18 to 24 hours prior thereto.

The defendant's evidence consisted of the testimony of two women who lived across the street from the Schuhs and the defendant himself. The two women testified they had seen Rose Schuh on the morning of Sunday, March 29, 1970, when Rose fed the dogs of one of the women. One of the women testified Rose said to her that she had fried some pancakes for the dogs that morning.

Defendant testified that he did not know the Schuhs; knew nothing of the murder of Rose; did not recognize a photo of the front of Schuh's apartment building; had never seen the back door to the Schuhs's apartment; did not recognize the baseball bat and never saw it prior to trial; did not recognize a photo of Rose and did not know her, and had never seen the cardboard box top mentioned supra before. He denied participation in the crime. He did not recall where he was on March 26, 27, 28, of 1970, and recalled that he spent the whole day, Easter Sunday, March 29, 1970, at home at 1725 O'Fallon, but did not recall where he spent that Sunday evening. He was shown a photo of the bedroom of the Schuh apartment which had been taken by the police upon arriving at the scene and denied ever seeing that scene before. He was asked if he ever touched the cardboard box top before and stated he never saw it prior to the trial.

It is apparent that the evidence of defendant's thumbprint being on the cardboard box top found in the bedroom of the Schuh apartment, among other papers that were strewn about, is the only evidence on the record that could arguably connect the defendant to the murder of Rose Schuh.

Defendant argues that the cardboard box top in the instant case was easily transportable; that there was no evidence as to when the print was put on it—before, during, or after the crime; that there was no showing of ownership of the box top or the manner by which it reached the position on the bedroom floor where it was found; that defendant's thumbprint could have gotten on the box top if defendant, who lived close to the Schuhs's residence, had picked it up and put it in a trash can

and thereafter Henry Schuh could have picked it up and brought it into his home. Defendant also suggests several other possibilities.

The defense contends that because of the various ways and times that the defendant's thumbprint could have been placed on the box top, the fingerprint evidence merely showed an opportunity to commit the crime and merely created a suspicion of guilt which, without more, would be insufficient to make a submissible case, citing State v. Rogers, 380 S.W.2d 398 (Mo. 1964), and State v. Walker, 365 S.W.2d 597 (Mo.1963). Neither case involves fingerprints.

■ That oft repeated rule with respect to circumstantial evidence is relied upon by defendant to support his proposition that no submissible case was made. In State v. Thomas, 452 S.W.2d 160 (Mo.1970), the rule was stated as follows at 162: "However, the evidence connecting the defendant with the burglary is circumstantial. In that situation the facts and circumstances relied upon by the State to establish guilt 'must not only be consistent with each other and with the hypothesis of defendant's guilt, but they must also be inconsistent and irreconcilable with his innocence and must point so clearly and satisfactorily to his guilt as to exclude every reasonable hypothesis of innocence.' State v. Walker, Mo.Sup., 365 S.W.2d 597, 601. In a case involving circumstantial evidence the circumstances need not be absolutely conclusive of guilty, and they need not demonstrate impossibility of innocence. State v. Taylor, Mo.Sup., 445 S.W.2d 282. We think the evidence was sufficient to comply with the strict requirements of the above stated rules. . . . "

In State v. Thomas, supra, fingerprints were found on a pane of glass—the thumbprint on one side and four fingerprints on the other side. The pane of glass was found in a hallway outside the burglarized apartment. The defendant testified that he was not present during or immediately aft-

er the burglary and the court held that the defendant's own evidence excluded the possibility that his fingerprints had gotten onto the glass at some time other than at the time of the burglary.

In State v. Schleicher, 442 S.W.2d 19 (Mo.1969), the court dealt with fingerprints found on an easily transportable item. There the defendant was charged with burglary and stealing from the victim's home. The only evidence connecting Schleicher to the crime was the presence of his fingerprint on a plastic jewelry tray found in the bedroom of the victim's house. Schleicher did not testify. The court held that the evidence of Schleicher's fingerprint on the tray was sufficient to warrant a jury's finding of guilt.

■ In the instant case the box top was found inside the victim's home on the bedroom floor. The defendant testified he had never seen the Schuhs's bedroom; never been in Schuhs's apartment; did not know the Schuhs, and never saw the cardboard box top prior to trial. The defendant has ruled out any reasonable possibility that his fingerprint was put on the box top under circumstances other than at the time of the homicide.

The court holds that the presence of the defendant's thumbprint on the box top in the circumstances and under the evidence in this case was sufficient to sustain a conviction. The point is overruled.

■ Defendant contends the trial court erred in denying defendant's pretrial motion of June 17, 1970, for production of a copy of the police report and in sustaining the state's objection to interrogatories filed by defendant.

The record on appeal does not contain the motion to produce the police report nor the filings with respect to interrogatories nor the court's rulings thereon. The record made during the argument on defendant's motion for new trial reflects an acknowledgment by the state that a motion to produce the police report was filed and

overruled and that defendant did file a request for interrogatories and the state's objection thereto was sustained.

As of the date of the trial court's ruling (apparently June 17, 1970), as well as the date of trial (October 4, 1971), the state was not generally required to produce the police report nor was it generally required to answer interrogatories filed by a defendant in a criminal case. State v. Franklin, 482 S.W.2d 420 (Mo.1972); State v. Morris, 480 S.W.2d 825, 830 (Mo. banc 1972); State v. Cannon, 465 S.W.2d 584, 588 (Mo. banc 1971); State v. Cox, 352 S.W.2d 665, 673 (Mo.1961). The point is overruled.

■ The defendant contends the trial court erred in overruling his objection to state's exhibit 4, a photograph of the body of Rose Schuh which showed her skirt up around her waist. Defendant's objection to this and other photographic exhibits was that they were "gory", inflammatory, and designed to arouse and enrage a jury. Defendant contends exhibit 4 led the jury to believe a rape was committed. There was no suggestion during the trial that a rape was committed. The photograph of the victim was taken at the scene and showed the clothing, including the flannel shirt the deceased was wearing when she was killed, and the position of the body as found by the police upon arrival at the scene. Furthermore the photograph was some evidence that a blunt instrument, such as a baseball bat, was used in committing the murder. Whether the photograph should have been admitted was a discretionary ruling by the trial court and no abuse of that discretion is demonstrated here. The point is overruled.

Defendant contends the court erred in permitting the state's fingerprint witness to state as a conclusion that in his opinion the thumbprint on the box top was made by the same person who provided the known print.

■ The rules governing opinion and expert testimony are the same in criminal cases as in civil. State v. Quilling, 363 Mo. 1016, 1021, 256 S.W.2d 751, 752 (banc 1953). In the civil area it is a well-established principle that expert witnesses, because of their superior knowledge, are called to state conclusions of fact respecting a subject concerning which persons without special skill or experience are incapable of deducting a correct conclusion. City of St. Louis v. Kisling, 318 S.W.2d 221, 225 (Mo.1958); Vitale v. Duerbeck, 338 Mo. 556, 567, 92 S.W.2d 691, 695 (1936). More particularly, a qualified expert can testify as to fingerprint comparison. State v. Tyler, 349 Mo. 167, 170, 159 S.W.2d 777, 779–780 (1942). On this record there was no significant objection to the witness's qualifications as an expert in fingerprint analysis and there were sufficient facts upon which he could base a conclusion. In this light the expert's conclusion that the thumbprints compared were those of the same person was admissible. Of course, this expert testimony can be considered like any other testimony by the jury which can weigh and credit testimony as it sees fit. State v. Quilling, supra.

The court has reviewed the record and concludes that the witness was properly qualified as an expert and, as such, was properly allowed to state the conclusion objected to by defendant. The weight of the evidence was for the jury. The point is overruled.

■ Defendant contends the court erred in admitting state's exhibit 11, the baseball bat, into evidence alleging that the evidence was not sufficient to show that the bat was used to strike the deceased.

The evidentiary facts relative to the bat have been set forth supra. Although the expert witness stated that he could not be absolutely certain that the fibers taken from the bat came from the deceased's shirt, he did state that in his opinion it was highly probable that the fibers came from that shirt. He also stated that "I feel in my own mind that they did come from the same shirt."

■ When one considers all the facts in evidence referring to the comparison of the fiber taken from the bat and the ones from the shirt, and the answers given by the expert, it seems clear that the witness was expressing his professional opinion on the matter and not just a personal opinion. There was substantial evidence to support the conclusion that the fiber from the bat was the same as that taken from the shirt. The opinion of an expert need not rise to absolute certainty but must be supported by a substantial factual evidentiary base, as is the case here. The point is overruled.

■ Defendant contends the trial court erred in denying permission to read from the original indictment the date that the state first alleged the murder occurred, March 26, 1970, and the date the substitute information was filed, October 4, 1971. Defendant states the ruling was erroneous because defendant should be permitted to show these dates in order to explain why he could not recall his whereabouts on March 29, 1970.

The defendant testified in this case and that testimony showed that although he had always understood that the crime was allegedly committed on March 26, 1970, he was nevertheless unable to account for his whereabouts on that date. Moreover, he did account for his whereabouts throughout the day of March 29, 1970. In these circumstances defendant was not prejudiced by the court's ruling. The point is overruled.

Finally defendant contends the court erred in overruling defendant's objection to the prosecutor's rebuttal argument where the subject of punishment was mentioned for the first time. The following occurred:

"(Mr. McDonald) The Court has given you an opportunity to determine whether or not he's guilty of murder in the first degree, and assess punishment at life or capital punishment.

"MR. BURRIDGE: I object, Your Honor, this is improper argument. Counsel did not go into punishment at all in his first half. It wasn't touched on by me. He's not entitled to go into it now in his rebuttal.

"THE COURT: Overruled.

"MR. McDONALD: You have that right to determine whether or not he's guilty and if he's guilty what should be proper punishment. Now you determine whether or not he's guilty of murder first and whether the punishment is either life or death. If you determine he is guilty of murder second degree, then it's a minimum of ten years, it can be life, it can be any number of years you decide—99, 100, 150, 200, it doesn't matter. That's your decision."

■ An analysis of the prosecutor's remarks indicates he was not really "arguing" for any particular punishment as was the case in State v. Wadlow, 450 S.W.2d 200 (Mo.1970), but merely telling the jury that the matter of punishment was for them to determine. The jury assessed punishment at 20 years upon a verdict of guilty of murder in the second degree.

The court is convinced that the prosecutor's remarks regarding punishment had no adverse effect upon the defendant in the jury's assessment of punishment in this case and therefore overrules the point.

■ However, prosecutors and trial judges are cautioned that, if the matter of punishment is to be discussed at all, it should be argued in the opening portion of the state's argument in order that defense counsel will have an opportunity to answer that argument. The failure to do so will cause serious risk of reversal for there are not many cases wherein the determination of no prejudice can be made on an appellate level in the area of argument. State v. Fair, 467 S.W.2d 938 (Mo. banc 1971);

State v. Wadlow, supra; State v. Peterson, 423 S.W.2d 825 (Mo.1968).

The judgment is affirmed.

All of the Judges concur.