STATE of Missouri, Respondent,

v.

Bernard MUSSMAN, Appellant.

No. KCD 27463.

Missouri Court of Appeals,
Kansas City District.

July 7, 1975.

Motion for Rehearing and/or Transfer
Denied Aug. 5, 1975.

Willard B. Bunch, Public Defender, E. L. Messina, Asst. Public Defender, Sixteenth Judicial Circuit, Kansas City, for appellant.

John C. Danforth, Atty. Gen., Jefferson City, Charles B. Blackmar, Special Asst. Atty. Gen., St. Louis, for respondent.

Before SOMERVILLE, P. J., PRITCH-ARD, C. J., and TURNAGE, J.

SOMERVILLE, Presiding Judge.

A jury found defendant guilty of Burglary, Second Degree, and fixed his punishment at imprisonment by the Department of Corrections for three years. The state's case rested on circumstantial evidence. Defendant seeks appellate relief on two grounds.

First, defendant urges that the wholly circumstantial nature of the state's evidence failed to negate "every reasonable inference of [his] innocence." Otherwise stated, defendant challenges the sufficiency of the evidence to sustain his conviction. In reviewing defendant's first assignment of error, this court accepts as true all evidence, circumstantial or direct in nature, favorable to the verdict, together with all favorable inferences that can reasonably be drawn therefrom, and rejects all evidence and in-

ferences to the contrary. *State v. Reed*, 453 S.W.2d 946 (Mo.1970); and *State v. Harris*, 452 S.W.2d 577 (Mo.1970). The evidence in the instant case, when so viewed, lends itself to the following summarization.

■ Ronald Luebben and his family left their Kansas City home for Chicago on the morning of October 13, 1973. Prior to departure, Mr. Luebben secured all the doors and windows to both the house proper and an attached back porch. When the Luebbens departed from their home the screening and glass in all the doors and windows, both to the house proper and the back porch, were intact.

On October 16, 1973, Officer Keith Gregory, a member of the Kansas City, Missouri, Police Department, was dispatched to the Luebben home where his attention was directed to the rear of the residence. There he observed a tear in the screening in the door opening onto the back porch. Upon entering the porch he discovered that the lower right windowpane "next to the lock" of the rear door to the house had been broken out, and was lying on the porch floor near the rear door.

"Evidence technicians" of the Kansas City, Missouri, Police Department, who were called to the scene, were able to "lift" twelve fingerprints, later identified as belonging to defendant, from the broken windowpane lying on the porch floor near the rear door. The screened back porch door and certain objects inside the house that were disturbed did not possess surfaces conducive to the detection of fingerprints.

After being notified that his home had been broken into, Mr. Luebben returned from Chicago and found several items of considerable value missing. Mr. Luebben did not know defendant, had never seen him in the neighborhood, and at no time ever gave him permission to be on the Luebben premises or in the Luebben home.

Defendant's mother, Jewell Smith, was his only witness. The Smith home, where defendant also resided, was located approximately one mile from the Luebben home.

Mrs. Smith stated that defendant was self-employed to the extent that he did "odd jobs and canvasses for paint jobs around the neighborhood". However, she did not recall defendant ever having performed any odd jobs in the block where the Luebben home was located.

Defendant principally relies upon *Borum v. United States*, 127 U.S.App.D.C. 48, 380 F.2d 595 (1967), to support his attack on the sufficiency of the evidence. There accused's conviction of "housebreaking" was reversed on appeal. In reversing Borum's conviction, the court noted that fingerprints, identified as Borum's, found on a jar in the complainant's home which had contained a coin collection stolen during the break-in, was the only evidence introduced by the government implicating Borum. The court stressed that the government had failed to introduce any evidence from which the jury could have reasonably found that the jar on which Borum's fingerprints were impressed was "generally inaccessible" to Borum. The case was distinguished from *Stevenson and Borum v. United States*, 127 U.S.App. D.C. 48, 380 F.2d 590 (1967), *cert. denied* 389 U.S. 962, 88 S.Ct. 347, 19 L.Ed.2d 375 (1967), decided the same day (wherein Borum and his brother-in-law, Stevenson, were jointly indicted and tried), affirming Borum's conviction for "housebreaking and robbery" committed one month after the alleged crime involved in *Borum v. United States, supra*. In *Stevenson and Borum v. United States, supra*, the government's case not only disclosed that Borum's fingerprints were found on objects located at the scene of the crime, but went a step further with the introduction of evidence from which the jury could have reasonably found that the objects at the scene of the crime upon which Borum's fingerprints were found were "generally inaccessible" to Borum. In the case at bar the defendant conveniently omitted any reference to *Stevenson and Borum v. United States, supra*.

■ Unlike *Borum v. United States, supra*, the state's evidence here disclosed the

presence of defendant's fingerprints at a place wherein an illegal entry into the Luebben home had occurred. The state also presented evidence that defendant had never been observed in the neighborhood where the Luebben residence was located and at no time had permission to be on the Luebben premises or in the Luebben home. Defendant's own evidence lends itself to the conclusion that he had never performed any odd jobs in the block where the Luebben home was located. To say the least, it is highly unlikely that defendant's "canvassing" for paint jobs would have placed him at the rear door of the Luebben residence, a location that was accessible to him only after gaining entrance onto the back porch through a screen door. Here the state's case more readily identifies itself with the government's case in *Stevenson and Borum v. United States, supra,* than to the government's case in *Borum v. United States, supra.* Testimony exists in the instant case from which the jurors could reasonably infer, without torturing the evidence, that the broken pane of glass containing defendant's fingerprints was not generally accessible to the defendant absent the intervention of criminally culpable conduct on his part. As held in *State v. Gray,* 504 S.W.2d 825, 826 (Mo.App.1974), a case involving facts remarkably similar to those here presented on appeal, "[a]lthough circumstantial, the fingerprint evidence was consistent with defendant's guilt and sufficient to support the guilty verdict." The obtaining rule in this state is that when the prosecution's case rests upon circumstantial evidence "the facts and circumstances must be consistent with each other and with the hypothesis of defendant's guilt, and they must be inconsistent with his innocence and exclude every reasonable hypothesis of his innocence." *State v. Ramsey,* 368 S.W.2d 413, 416 (Mo. 1963); and *State v. Brunson,* 516 S.W.2d 799, 803 (Mo.App.1974). However, the circumstantial evidence rule should not be unduly distorted in its application, and, therefore, "the circumstances need not be absolutely conclusive of guilty, and they need

not demonstrate impossibility of innocence [;] . . . the mere existence of other possible hypothesis (*sic*) is not enough to remove the case from the jury." *State v. Thomas,* 452 S.W.2d 160, 162 (Mo.1970). When the state's case is so measured it is abundantly clear that the jury could and did reasonably conclude that the Luebben home was burglarized as alleged in the information, that defendant left his fingerprints on the broken pane of glass when he illegally broke into and entered the Luebben home, and that defendant's identification was adequately established.

Discussion of defendant's first point is concluded with the following observation. During the past decade federal and state courts have subtly urged those charged with law enforcement to rely on scientific evidence rather than confessions to apprehend and prosecute persons accused of crimes. This advice was heeded by the state in the instant case by relying on fingerprint evidence, a form of evidence widely accepted as having scientific reliability. Defendant, under the guise of some imaginative legal nicety, would seemingly preclude even the apprehension and prosecution of an accused by means of scientific evidence. The attack on the sufficiency of the evidence, after careful consideration, is ruled adversely to defendant.

■ Second, defendant urges that the trial court erred in overruling his motion to suppress certain statements he made to the officer who arrested him. Defendant concedes that the arresting officer gave him a proper Miranda warning before any interrogation occurred. Nevertheless, defendant claims that statements he made importing that he didn't remember whether he committed the burglary in question were inadmissible since he was under the influence of drugs at the time, thereby rendering the statements involuntary. The trial court ruled that the statements were voluntarily made, but were nonetheless inadmissible as direct evidence of defendant's guilt since they failed to constitute an admission or confession of the crime for which he was

being tried. However, the trial court ruled that the statements were potentially admissible for purposes of impeachment in the event defendant took the stand and testified "that he remembers that he did not commit the burglary." Defendant did not take the stand during the trial and the statements were never offered by the state for any purpose.

Defendant unabashedly accuses the trial court of reversible error in overruling his motion to suppress because, as nearly as this court can ascertain, the statements were involuntarily made and the potential threat that the state might use them for impeachment purposes stifled his desire to take the stand and testify in his own behalf. *Jackson v. Denno*, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964), is the sole authority advanced by the defendant to support his second and final point. It is cited by defendant as standing for the proposition that due process is violated when a conviction is founded, in whole or in part, upon an involuntary confession. A more careful analysis reveals that *Jackson v. Denno, supra,* condemned New York state procedure which left to the jury, under proper instructions, the ultimate determination of the voluntary character and truthfulness of a confession, although it was underpinned by the fundamental principle which defendant presently attributes to it.

This court harbors serious reservations whether defendant's final point, abstruse at best, presents a justiciable issue. Be that as it may, the point apparently sought to be posed by defendant can be readily disposed of on fixed and established principles of law pertaining to judicial ascertainment of the admissibility of statements by an accused when their voluntariness is put in issue. On appeal, this issue sifts down to whether there was sufficient evidence to sustain the trial court's finding that the statements were voluntarily made by defendant. *State v. Alewine*, 474 S.W.2d 848, 852 (Mo.1971).

At the hearing on his motion to suppress defendant testified that during his interrogation he was under the influence of eight "mini-whites" and therefore did not know "exactly" what "was going on". On the other hand, he admitted that he was able to comprehend his surroundings, knew he had been arrested on suspicion of burglary, and recalled answering questions as to other burglaries, one of which he was able to identify by giving the approximate address of its location. The interrogating officer testified that defendant appeared to comprehend all questions propounded to him, unhesitatingly responded to them with coherent answers, and in no way appeared to be under the influence of drugs. In short, the interrogating officer perceived nothing abnormal about defendant's appearance or demeanor which in anyway indicated that defendant's senses were dulled by drugs. Perforce, the issue of voluntariness resolved itself into one of credibility. This court quite properly defers to the trial court's assessment of the credibility of the evidence surrounding the issue of voluntariness in view of its superior opportunity to ferret out the truth. *State v. Anderson*, 384 S.W.2d 591, 604 (Mo. banc 1964); and *Howard v. Swenson*, 404 F.2d 469, 472 (8th Cir. 1968). After so doing, ample evidence existed for the trial court to find that defendant's statements were voluntarily given. Defendant's final point may be ruled against him for this reason alone. See: *United States v. Wilkins*, 477 F.2d 323 (8th Cir. 1973), *cert. denied*, 414 U.S. 843, 94 S.Ct. 103, 38 L.Ed.2d 81 (1973); and *State v. Stephens*, 507 S.W.2d 18 (Mo. banc 1974).

Judgment affirmed.

All concur.