**STATE of Missouri, Respondent,**

v.

**Johnnie STERLING, Appellant.**

**No. KCD 27782.**

Missouri Court of Appeals, Kansas City District.

Feb. 9, 1976.

Motion for Rehearing and/or Transfer Denied March 3, 1976.

Thomas M. Larson, Public Defender, Sixteenth Judicial Circuit, Richard G. Roth, Asst. Public Defender, Kansas City, for appellant.

John C. Danforth, Atty. Gen., Charles A. Blackmar, Asst. Atty. Gen., Jefferson City, for respondent.

Before SHANGLER, P. J., and SWOFFORD and SOMERVILLE, JJ.

SOMERVILLE, Judge.

Having waived a jury trial, defendant was tried to the court and convicted of burglary, second degree, and stealing, and sentences of six and three years respectively were imposed to run concurrently.[1] He now exhorts this court to relieve him of the convictions on the sole ground that the evidence is insufficient to support them. Perforce, a thorough study of the evidence is required.

In taking measure of the evidence in this case to determine whether it is sufficient to support the convictions, this court views it in the light most favorable to the state, accepting as true all evidence (whether circumstantial or direct) and inferences to be reasonably drawn therefrom favorable to the verdict and rejecting all evidence and inferences unfavorable thereto. *State v. Mussman*, 526 S.W.2d 62 (Mo.App. 1975); *State v. Reed*, 453 S.W.2d 946 (Mo. 1970); and *State v. Harris*, 452 S.W.2d 577

---

1. Defendant was charged with the separate but related offenses in the same information as provided for by Section 560.110, RSMo 1969.

(Mo.1970). Conjunctionally, when the state's case rests upon circumstantial evidence the obtaining rule is that "the facts and circumstances must be consistent with each other and with the hypothesis of defendant's guilt, and they must be inconsistent with his innocence and exclude every reasonable hypothesis of his innocence." *State v. Ramsey*, 368 S.W.2d 413, 416 (Mo. 1963). *State v. Thomas*, 452 S.W.2d 160, 162 (Mo.1970), however, recognizes that application of the obtaining circumstantial evidence rule in criminal cases is somewhat tempered in that "the circumstances need not be absolutely conclusive of guilty, and they need not demonstrate impossibility of innocence [;] . . . the mere existence of other possible hypothesis [sic] is not enough to remove the case from the jury."

The state's evidence, in the order presented, lends itself to being fairly summarized as follows: Charles E. O'Farrell was employed by "Burstein-Applebee" as manager of its store at 1012 McGee Street, Kansas City, Missouri. At approximately 2:00 A.M. on May 1, 1974, he was called to the store. Upon his arrival he observed cars and police "all around . . . on the roof, everywhere." One of the police officers at the scene asked him to unlock the front door of the store in order that the police might enter the building. O'Farrell complied with the officer's request. While at the scene O'Farrell noticed that two windows located at the rear of the store building had been broken and opened—a basement window and a window on the first floor. He testified that when he closed the store and locked up the previous evening the two windows were intact. Outside the store building he identified a number of car stereo speakers displayed to him by the police as the property of his employer and stated that they had a value of $65.00. According to O'Farrell the car stereo speakers he identified had previously been on two "displays" located on the elevator at the basement level of the store. After identifying the items O'Farrell went to the elevator and observed that the "displays" were "torn apart" and that the car stereo speakers which had been on them "were ripped out". O'Farrell further testified that defendant was not an employee of "Burstein-Applebee" and had no permission to be inside the store building.

James Bruce Wycoff, an officer on the Kansas City, Missouri, Police Department, testified that in response to a call he arrived at the "Burstein-Applebee" store at 1012 McGee Street at approximately 1:30 A.M. on the morning of May 1, 1974. Upon his arrival he observed another police officer "covering" the front door of the store building. Consequently, he went around to the rear of the store building where he encountered three other police officers. Their joint investigation at the rear of the building disclosed the two broken windows previously described by Mr. O'Farrell, manager of the store. The broken basement window was a "swivel window" and the "lower" portion was "standing open". While at the rear of the store building he and the other officers observed a Cadillac automobile sitting in a parking lot "directly across the alley" to the west of the store building. Wycoff and the other three officers approached the Cadillac and discovered that it was occupied by two "males". The two male occupants were asked to get out of the Cadillac and produce identification. The male occupants complied with the officers' request and also gave the officers permission to search the Cadillac. During their search of the Cadillac the officers discovered a number of car stereo speakers in the trunk which they seized and later displayed to Mr. O'Farrell, the store manager, outside the store building. Mr. O'Farrell, as previously noted, identified the car stereo speakers as being the property of his employer. Wycoff testified that one of the occupants of the Cadillac had white shoes on that "were covered with red brick dust similar to that on the back of the building"; further, when he observed defendant at the scene following his arrest he observed "red brick dust" on defendant's clothing.

Richard A. Lecuru, an officer on the Kansas City, Missouri, Police Department, testified he was with the "Canine Unit" and at approximately 1:30 A.M. on May 1, 1974, in response to a call, he proceeded to 1012 McGee Street. He had a police dog with him and both entered the "Burstein-Applebee" store through the broken basement window at the rear of the building. A search of the basement was uneventful except for the fact that the elevator, which was the only inside means of access between the basement and first floor of the building, was not working. The store manager was called to the scene to unlock the front door so that the remainder of the building could be searched. After the store manager unlocked the front door, Lecuru and his canine friend entered the store building and searched the first floor level. The search of the first floor was uneventful. The two then proceeded to the second floor of the store building where the dog began "indicating" a window type opening in a suspended false ceiling. Officer Lecuru climbed through the opening in the false ceiling and discovered defendant "hiding" up there some 15 or 20 feet south of the opening. As Lecuru was arresting defendant the two fell through the suspended false ceiling and ended up on the floor below. While the two were falling defendant began screaming that he was a juvenile,[2] that there was someone else hiding in the basement of the building, and that he had been forced into the building by some people in a Cadillac which was at the rear of the building. Lecuru later apprehended another person in the basement of the building. During the trial Lecuru identified defendant as the person he arrested when discovered hiding in the store building above the suspended false ceiling.

No evidence was offered by the defendant.

■ From the evidence just iterated the trier of the facts could reasonably infer (and obviously did) that defendant, acting in concert with others, broke into and entered the "Burstein-Applebee" store building at 1012 McGee Street, Kansas City, Missouri, in which merchandise belonging to them was kept, with the intent to steal such merchandise; further, that defendant, acting in concert with others, did intentionally appropriate merchandise belonging to "Burstein-Applebee" without its consent, and did exercise dominion over said property in a manner inconsistent with the rights of "Burstein-Applebee" by taking and removing said property from said store building. Under the charges leveled against defendant such reasonable inferences drawn from the evidence met all the elements of burglary, second degree, as prescribed by Section 560.070, RSMo 1969, and of stealing as prescribed by Section 560.156, RSMo 1969. The following facts warrant special emphasis as constituting an evidentiary basis for such reasonable inferences obviously drawn by the trier of the facts: (1) the existence of the broken windows at the rear of the building which were intact the previous evening when the store was closed; (2) the presence of a number of car stereo speakers in a Cadillac automobile occupied by two male subjects which was parked in the vicinity of the rear of the store building; (3) the identification of the car stereo speakers found in the Cadillac as belonging to "Burstein-Applebee" which had been in the store building the previous evening; (4) the discovery of defendant hiding in a concealed place above a false ceiling in the store building approximately thirty minutes after the police first arrived at the scene; and (5) defendant's admitted knowledge of the presence of the two male subjects and the Cadillac they were occupying in the vicinity of the rear of the store building. See: *State v. Simmons*, 494 S.W.2d 302 (Mo.1973); *State v. Barker*, 478 S.W.2d 325 (Mo.1972); and *State v. Allen*, 420 S.W.2d 330 (Mo.1967).

■ Defendant puts great stock in the fact that according to the state's own evi-

---

2. The record is silent as to defendant's age and no issue of his age was ever made.

dence he told Officer Lecuru that he had been forced into the building by the male subjects who were in the Cadillac and that such stood uncontradicted as proof that he was not acting in concert with others in burglarizing the "Burstein-Applebee" store and the related burglarious stealing that occurred. In taking this position defendant conveniently ignores the obtaining rule that the trier of the facts could reject the self-serving portion of his statement to Lecuru as untrue and accept the remaining portions as true. *State v. Caffey*, 457 S.W.2d 657, 664 (Mo.1970); *State v. Sallee*, 436 S.W.2d 246, 254 (Mo.1969); and *State v. Caldwell*, 434 S.W.2d 571, 575 (Mo.1968). The trier of the facts could, and obviously did, reasonably infer from the remaining portions of defendant's statement to Officer Lecuru, i. e., the presence of another subject in the building and the presence of persons in a Cadillac parked in the vicinity of the rear of the building, that defendant was aware of the presence and activities of such persons and acted in concert with them in the perpetration of the burglary and related stealing.

Defendant's claim that he was forced into the building is extremely tenuous in light of the fact that he was discovered and apprehended some thirty minutes after the police arrived at the scene concealed above a false ceiling, particularly so in view of the flurry of police activity in and around the "Burstein-Applebee" store for some thirty minutes prior to his discovery. Evidence of concealment is admissible, *State v. Cochran*, 366 S.W.2d 360, 362 (Mo.1963), *cert. denied*, 375 U.S. 981, 84 S.Ct. 492, 11 L.Ed.2d 426 (1964), and may be considered by the trier of the facts in determining the guilt or innocence of an accused, *State v. Harris*, 325 S.W.2d 352, 358 (Mo. App.1959). Such being the case, defendant's self-imposed concealment turned out to be his nemesis.

The facts disclosed by the record, and the reasonable inferences to be drawn therefrom, after rejecting the self-serving portion of defendant's statement to Officer Lecuru, are (1) consistent with each other and with the hypothesis that defendant, acting in concert with others, burglarized the "Burstein-Applebee" store and stole property therefrom belonging to "Burstein-Applebee", are (2) inconsistent with defendant's alleged innocence, and (3) palpably exclude every reasonable hypothesis of defendant's innocence.

Judgment affirmed.

All concur.