STATE of Missouri, Plaintiff-Respondent,

v.

Darnell IVERY, Defendant-Appellant.

No. 36,731.

Missouri Court of Appeals,
St. Louis District,
Division Three.

Feb. 17, 1976.

Charles E. Kirksey, Jr., St. Louis, for defendant-appellant.

John C. Danforth, Atty. Gen., Preston Dean, Asst. Atty. Gen., Jefferson City; Brendan Ryan, Circuit Atty., Gary W. Brandt, Asst. Circuit Atty., St. Louis, for respondent.

GUNN, Judge.

Defendant was convicted of stealing a motor vehicle and sentenced to six years imprisonment. Defendant appeals his conviction on the basis that the trial court erred in failing to sustain his motion for judgment of acquittal and in failing to instruct on certain lesser included offenses. We find no error and affirm the judgment.

At approximately 8 a. m. on May 15, 1973, Erwin Teich left his 1970 Cadillac tudor at its regular parking place at the Shell service station at 12th Street and Delmar Boulevard in St. Louis. He locked his car and gave the keys to the service station attendant with instructions to perform a motor vehicle license inspection while he was at work. When he returned to the station from work at approximately 4:45 p. m., the Cadillac was missing. St. Louis police were notified and responded to Mr. Teich's report of his stolen automobile. Coincidentally with Mr. Teich's call, St. Louis police were investigating a report that there were three suspicious males in an automobile parked in a housing project area a short distance from the service station from which Mr. Teich's automobile had been taken. The automobile was similar in description to Mr. Teich's. The police officer taking the report from Mr. Teich about his automobile was aware of the report on the automobile at the housing project, having heard a call on it over his police radio. Mr. Teich was escorted to the housing project where he identified the 1970 Cadillac tudor found there as belonging to him. The car was parked under a breezeway off the street next to an apartment building. When Mr. Teich first observed the auto, there was blood on the passenger door, the doors were open, and there were substantial quantities of blood on the front and back seats of the car and on the floor. The contents of the glove compartment had been strewn in and about the car, and the jack had been taken from the trunk. The blood in the interior was visible from outside the car.

The police officer who had investigated the report that there had been three suspicious males in an automobile—as it turned out, Mr. Teich's automobile—testified that shortly after 4:38 p. m. on May 15, while on a cruising patrol, he had received the report of the automobile in the apartment project area. The police officer specifically recalled that approximately 10 minutes before he received the report on the auto he had

viewed the breezeway area where the Cadillac was ultimately found and observed no automobile there at that time.[1] He further testified that he was only about a block from the breezeway area when he received the call relating to the automobile and immediately responded. The police officer and his partner observed that when they arrived at the scene of Mr. Teich's Cadillac, the doors were open, there was a substantial quantity of blood throughout the interior of the car, and the contents of the glove compartment, including papers bearing Mr. Teich's name, were scattered in and about the car.

The evidence technician unit was summoned. Fingerprints were lifted from the right backside of the interior rearview mirror, and palmprints were taken from the steering wheel of Mr. Teich's Cadillac. The prints were described as "exceptionally good prints" which "came out real clear, and what we would consider a fresh latent fingerprint." The fingerprints taken from the auto's interior rearview mirror and the palmprints from the steering wheel were positively identified as defendant's. There was a total of seven prints of defendant's right index, middle, ring and little fingers taken from the back of the inside rearview mirror. The palmprint was made in gripping the steering wheel.

The next day the defendant was arrested at his residence in the apartment project area in which Mr. Teich's automobile had been recovered.

■ Defendant first contends that there was insufficient evidence of his guilt, and, hence, his motion for judgment of acquittal should have been sustained. In ruling on this case, we are guided by certain basic tenets on the issue of whether a submissible case has been made in a criminal proceeding. We are to consider the facts in evidence and the inferences reasonably to be drawn therefrom in the light most favor-

able to the State. *State v. Thomas,* 529 S.W.2d 379 (Mo.1975); *State v. Colton,* 529 S.W.2d 919 (Mo.App.1975). Such evidence may be circumstantial. *State v. Johnson,* 510 S.W.2d 485 (Mo.App.1974). However, the facts and circumstances of a conviction based on circumstantial evidence must be consistent with each other, consistent with the hypothesis of the defendant's guilt and inconsistent with innocence and point satisfactorily to guilt so as to exclude every other reasonable hypothesis of innocence. *State v. Cox,* 508 S.W.2d 716 (Mo.App.1974); *State v. Cain,* 507 S.W.2d 437 (Mo.App. 1974). But "[i]n a case involving circumstantial evidence the circumstances need not be absolutely conclusive of guilty, and they need not demonstrate impossibility of innocence." *State v. Maxie,* 513 S.W.2d 338, 343 (Mo.1974).

■ While here defendant's fingerprints amounted to the only evidence associating him with the theft of Mr. Teich's automobile, we believe such evidence was sufficient to submit to the jury whether defendant had participated in the auto theft and was sufficient to support his conviction. Since neither Mr. Teich nor the service station attendants with whom Mr. Teich had left his automobile had given defendant permission to take the automobile, it is reasonable to infer that defendant impressed his fingerprints and palmprints in the auto during the course of its theft, thus in an action inconsistent with any theory of defendant's innocence.

It was conceded by defendant's counsel at trial that the defendant had been inside the car the day of its theft. Giving effect to the evidence most favorable to the State and reasonable inferences to be drawn therefrom, Mr. Teich's automobile was driven into the housing project breezeway area where it was found in the ten minute span of time between which the police officer cruising through specifically observed that

---

1. The police officer's partner did not specifically view the breezeway area when cruising the housing project area 10 minutes pri- or to receiving the call to investigate the scene. In fact, he stated that he could not see the breezeway area.

there was no car in the breezeway at 4:38 p. m., the time the report of suspicious activity was received by him. Any suggestion that defendant, an adult, would have within that ten minute period of time climbed into a car soaked with blood and with papers scattered about on a whim or for foolish fancy merely to imprint his palmprints on the steering wheel and his fingerprints on the backside of the interior rearview mirror, without more, is fatuous. Rather, the impression of the fingerprints and palmprints inside a blood soaked car and in the location and circumstances found would be inconsistent with any theory of defendant's innocence in the taking of Mr. Teich's Cadillac. As stated in *State v. Thomas,* 452 S.W.2d 160 at 162 (Mo.1970)—a case upholding a conviction of burglary solely on fingerprint evidence found on glass *outside* a building:

> "[T]his Court has made it plain that the mere existence of other possible hypothesis is not enough to remove the case from the jury. If the judge were to direct acquittal whenever in his opinion the evidence failed to exclude every hypothesis than that of guilt, he would preempt the functions of the jury. Under such a rule the judge would have to be convinced of guilt beyond peradventure of doubt before the jury would be permitted to consider the case. That is not the place of the jury in criminal procedure. They are the judges of the facts and of guilt or innocence, not merely a device for checking upon the conclusions of the judge."

We believe that the circumstances here created a jury question as to defendant's guilt and that there was substantial evidence to support the finding of the jury. We do not, therefore, disturb that finding on appeal. *State v. Gamache,* 519 S.W.2d 34 (Mo.App. 1975).

For some decisions upholding convictions based solely on fingerprint evidence and proof of guilt similar to that before this court, see: *State v. Maxie,* supra; *State v. Thomas,* supra; *State v. Schleicher,* 442 S.W.2d 19 (Mo.1969); *State v. Allen,* 420 S.W.2d 330 (Mo.1967); *State v. Simmons,* 528 S.W.2d 8 (Mo.App.1975); *State v. Mussman,* 526 S.W.2d 62 (Mo.App.1975); *State v. Gales,* 507 S.W.2d 35 (Mo.App.1974); *State v. Gray,* 504 S.W.2d 825 (Mo.App.1974); *State v. Lane,* 497 S.W.2d 207 (Mo.App. 1973).

We note particularly that in *State v. Thomas,* supra, *State v. Allen,* supra, *State v. Mussman,* supra, and *State v. Lane,* supra, the fingerprint evidence was gathered from items (principally broken glass) found outside a building in which a burglary had been committed. How much more so, then, is any theory of defendant's innocence in this case thoroughly enervated by the placement of defendant's prints *inside* Mr. Teich's bloodsoaked automobile on the backside of the interior rearview mirror and steering wheel and within an extremely short time span involved.

Defendant's second point on appeal charges that the trial court erred in failing to instruct (although there was no request made) on the lesser included offenses of tampering with a motor vehicle, operating a motor vehicle without owner's consent, and climbing in and upon a motor vehicle. Defendant argues that the trial court thereby failed to present the jury with the theory of defendant's case. We observe that at no time was any theory of defendant's case suggested by defendant. But, in any event, Judge Clemens nicely answers defendant's second point in the recent decision of *State v. Sturgell,* 530 S.W.2d 737 (Mo.App.1975). In *State v. Sturgell,* the defendant, who was convicted of stealing a motor vehicle, appealed on the basis that the trial court (although not requested to do so) had failed to instruct on the lesser offense of tampering. It was first noted that where the evidence supports an asserted defense or a lesser included offense, failure to instruct thereon would be error under Rule 27.20(c). But it was also stated:

> "The test of whether an instruction on a lesser, included offense is required is whether 'the evidence shows that a defendant may not be guilty of the offense

charged (stealing), but may be guilty of an offense (tampering) necessarily embraced in the charge.' *State v. Leigh,* 466 S.W.2d 685[2] (Mo.1971). 'Before instructions on the lesser or included offenses are compelled, however, there must be evidentiary support for such offenses.' *State v. Washington,* 357 S.W.2d 92[6–8] (Mo.1962). See also *State v. Walker,* 505 S.W.2d 119[5–8] (Mo.App.1973). We note the only defense evidence concerned an alibi, and there was no evidence in the State's case that defendant merely tampered with but did not steal the car. Had the evidence warranted a finding that defendant was guilty only of tampering he would be entitled to a separate instruction thereon. But here the tampering and theft were continuous inseparable acts: Hence, the court did not err in failing to instruct on tampering as a lesser, included defense."

In this case, the circumstances are the same as in Sturgell; there was no evidence to support defendant's appellate hypothesis of the lesser offenses. Thus, no error was committed in failing to instruct on a lesser offense.

The judgment is affirmed.

SIMEONE, P. J., and KELLY, J., concur.