STATE of Missouri, Respondent,

v.

Shy BLAND, Appellant.

No. WD 39783.

Missouri Court of Appeals, Western District.

July 19, 1988.

Motion for Rehearing and/or Transfer to Supreme Court Denied Aug. 30, 1988.

Application to Transfer Denied Oct. 18, 1988.

Robert G. Duncan, Kansas City, for appellant.

William L. Webster, Atty. Gen., Jefferson City, Philip M. Koppe, Asst. Atty. Gen., Kansas City, for respondent.

Before SHANGLER, P.J., and LOWENSTEIN and GAITAN, JJ.

LOWENSTEIN, Judge.

Appellant Shy Bland was charged with eight felony counts including forcible rape, § 566.030, RSMo 1986, three counts of forcible sodomy, § 566.060, first degree sexual abuse, § 566.100, armed criminal action, § 571.015.1, first degree robbery, § 569.020, and first degree burglary, § 569.160. Bland was convicted after jury trial, and sentenced to consecutive terms of imprisonment of 30 years for forcible rape, and 20, 15 and 30 years for each forcible sodomy count, to be served consecutively to his concurrent sentences of three years for sexual abuse, 20 years for armed criminal action, 15 years for robbery and 10 years for burglary. Bland appeals challenging the sufficiency of the evidence, the trial court's refusal to submit a "mere presence" jury instruction, and the imposition of consecutive sentences on the rape and three sodomy counts.

Bland's first point on appeal asserts that the guilty verdicts were not supported by sufficient evidence. He states the evidence against him was totally circumstantial and based upon one partial fingerprint inexpertly identified as his. In reviewing the record to meet this contention, this Court accepts as true all evidence, whether circumstantial or direct, tending to prove defendant guilty together will all reasonable inferences supportive of the verdict. *State v. Brooks*, 618 S.W.2d 22, 23 (Mo. banc 1981). Because this court's function is not to weigh the evidence but to determine whether there was sufficient evidence from which reasonable persons could have found defendant guilty as charged, portions of the record contrary to the verdict are disregarded. *Id.*

All of the charges stemmed from an incident in the Westport area of Kansas City involving the victim MM. The victim testified she was awakened in the early morning hours of October 31, 1985, with a nudge, a knife held to her neck, and the words "wake up, I'm going to fuck you, bitch." MM had moved into a back unit of a three story apartment building three days before. Because of the darkness, MM was unable to distinguish any of her attacker's features except that there was some sort of a light covering over his face. MM stated she could not identify the rapist. She determined it was a black man because he said, "this nigger is going to fuck your white pussy." His voice did not give a clue to his race as he at all times spoke in a low whisper. MM described in detail the course of the rape, which included two separate instances of vaginal intercourse, two instances of anal intercourse, as well as mouth to vagina contact. During the course of the rape the man covered MM's face with a pillow when pain caused her to cry out. He also picked up the knife he had apparently put down and again held it against her neck when she was slow to comply with his instructions. MM testified that after the final act of anal intercourse the rapist told her not to move and that he'd be back. He asked if she had any money, to which she directed him, and then he left the bedroom taking change off a desk as he did so. Eventually MM got up and proceeded to look around her apartment. The apartment's one door was still deadbolted and chained. The apartment's windows were also closed except for one in the kitchen. The open window was a crank type, and it was open all the way. MM

attempted to close the window and found it was in fact jammed open and she concluded that was how the rapist had entered her apartment. MM later determined the rapist had taken the ten dollar bill she had told him about as well as the laundry change she heard him take.

Office Michael Weller of the Kansas City, Missouri Police Department testified he was the first officer on the scene. He testified one window in the apartment was open. He also found the victim who was very upset.

Detective Gary Smith was a crime scene investigator for the Kansas City Police Department. Smith, a crime scene investigator for over nine years, testified about a number of tasks he carried out at MM's apartment. He photographed the apartment from various angles inside and out. He testified the apartment door was examined and no evidence of any forced entry was found. As to the window suspected as the point of entry, Smith testified it was operated by means of a crank with a hand latch to secure it, and that it was reported to him that it was locked prior to the crime. He found no evidence to indicate it had been forced open. Smith dusted the window for fingerprints inside and out, including the marble sill. He concluded nothing else the suspect was known to have touched was conducive to prints. The officer testified as to how fingerprints are lifted and that they are sent to the fingerprint identification unit for examination. Smith lifted one card of prints from the inside of one of the lower panes of the open window, and did not recall how many prints were on the card. As part of his investigation, Smith recovered the bed clothing and sheets, which were sent to the Regional Crime Lab.

John T. Wilson testified as the chief forensic chemist at the Regional Crime Lab in Kansas City. His duties included analysis of various types of trace evidence such as blood, hair and fibers. Wilson testified to his educational background and training for his position, and that he had worked at the lab since 1973. In this case, Wilson compared hair taken from MM's pubic hair combings after the rape with a head hair standard from Shy Bland. He explained how such comparisons are done and the features of hair that are analyzed. Wilson found that Bland's head hair was dyed, but that except for color the microscopic features of Bland's hair were indistinguishable from the unknown hair from MM's pubic hair combing. Wilson testified that since the color was different he could not say there was a match, but that he could not eliminate Bland as a contributor. Elaborating, Wilson explained his analysis could never definitely conclude a hair came out of a particular person's head, but that he could eliminate a person as a possible source. Wilson also testified that Negroid pubic hair found in the bedding was not Bland's.

Clarence Gibson testified concerning his interview with Bland as part of a sex crimes unit investigation. Bland denied any knowledge of or involvement in the rape. Confronted with the fact his fingerprint had been found on an inner window, Bland responded that the police must have put it there. He stated he had never been inside any house on Roanoke.

Kathleen Hentges testified as an expert latent fingerprint examiner for the Kansas City Police Department. Hentges had a total of eight years experience working with fingerprints, with five and one-half as a latent print examiner. Hentges had attended a forty hour advanced latent fingerprint course and a 120 hour administrative advanced latent fingerprint course, both taught by the F.B.I. She stated she had identified people by comparing their fingerprints with latent prints "thousands of times," and had testified as an expert in fingerprint comparisons in the range of 40 to 50 times. Hentges testified generally and specifically concerning fingerprinting and the evidence in this case. Of the four prints lifted from the inside pane of the west kitchen window, only one—the left middle finger—was of any value for comparison. This fingerprint, compared with prints taken from Bland by Hentges in December, 1986, yielded nineteen points of identification. Hentges testified that for normal acceptance, eight to twelve points

of identification were required. She also testified the fingerprints compared were one and the same, were unique to one person, and that person was Shy Bland. This concluded all of the evidence.

Bland attaches great significance to the fact that the "only evidence" incriminating him was a partial latent fingerprint on a window which when open is on the outside of the apartment building. Presumably Bland is arguing he thereby had access to the window and there is some innocent though unstated explanation for his fingerprint being on the window. The Missouri Supreme Court has said when the evidence connecting the defendant with the burglary is circumstantial,

> the facts and circumstances relied upon by the State to establish guilt "must not only be consistent with each other and with the hypothesis of defendant's guilt, but they must also be inconsistent and irreconcilable with his innocence and must point so clearly and satisfactorily to his guilt as to exclude every reasonable hypothesis of innocence." (citation omitted) In a case involving circumstantial evidence the circumstances need not be absolutely conclusive of guilty, and they need not demonstrate impossibility of innocence.

*State v. Thomas*, 452 S.W.2d 160, 162 (Mo. 1970); *State v. Maxie*, 513 S.W.2d 338, 343 (Mo. 1974). The *Thomas* court reasoned that directing acquittal whenever the evidence failed to exclude every hypothesis than that of guilt would amount to a preemption of the jury's function. 452 S.W.2d at 160. Specifically addressing fingerprints found on pieces of glass outside the door of a burglarized apartment, the court said "[p]roof, however, that fingerprints found in the place where a crime is committed, under such circumstances that they could only have been impressed at the time that the crime was committed—corresponding to those of the accused—may be sufficient proof of identity to sustain a conviction." *Id.* at 163.

█ Turning to the case before this court, the evidence was sufficient proof of identity to sustain the conviction. Bland's fingerprint was found on the *inside* of the window identified by the victim and the crime scene investigator as the point of entry into the apartment for the rapist. Contrary to Bland's assertion that no evidence indicated the window had been shut or locked previous to the incident, the crime scene investigator testified he had been told it was locked. The state's evidence disclosed the presence of defendant's fingerprint at a place where an illegal entry occurred, *State v. Mussman*, 526 S.W.2d 62, 63–64 (Mo.App. 1975), and the print's location inside the window associated him with the opening of the window, *State v. Arnold*, 534 S.W.2d 836, 838 (Mo.App. 1976). *See also*, *State v. Hulbert*, 621 S.W. 2d 310, 311 (Mo.App. 1981) (fingerprints on inside surface of glass not essential to submissiblity but adds weight to state's case). The "jurors could reasonably infer, without torturing the evidence, that the ... glass containing defendant's fingerprints was not generally accessible to the defendant absent the intervention of criminally culpable conduct on his part." *Mussman*, 526 S.W.2d at 64. Bland's statement to the police that he had never been inside any house on Roanoke and his denial of knowledge of or involvement in the rape has the effect of ruling out any reasonable possibility that his fingerprint was put on the window under circumstances other than at the time of the rape and robbery. *Maxie*, 513 S.W.2d at 343. Besides the fact that his exculpatory statement to the police did not have to be believed by the jury, *State v. Owsley*, 643 S.W.2d 78, 80 (Mo.App.1982), Bland's argument that the window opening outward left the possibility of some innocent contact is nothing more than an argument. There was no evidence to support any theory he advanced, *State v. Blair*, 631 S.W.2d 91, 94 (Mo.App.1982), and nothing to indicate the print at that particular spot was placed there innocently, *State v. Allen*, 420 S.W.2d 330, 334 (Mo. 1967). Even the existence of other possible hypotheses is not enough to remove the case from the jury. *Blair*, 631 S.W.2d at 94. This court finds that the jury could have concluded from all the evidence any possibility the fingerprint was put on the window at any

time other than when Bland crawled through it to commit the crimes charged was ruled out. *State v. Hubbard,* 698 S.W.2d 908, 912–13 (Mo.App. 1985). This point on appeal is denied.

Bland devotes a significant amount of argument under this point to the alleged "inexpert testimony" of the expert who made the fingerprint comparison and identification. The argument is without merit. Counsel for Bland extensively cross-examined the expert, and while he did not shake her identification of the fingerprint as Bland's, he may have called into question her knowledge as to certain facts of the taking and lifting of fingerprints. No specific challenge was made to the qualification of the witness as an expert, and no attempt to exclude the testimony was made. "It is the jury that must weigh and credit an expert's testimony." *State v. Parker,* 535 S.W.2d 126, 128 (Mo.App. 1976).

■ Bland's second point on appeal is that the trial court prejudicially erred in refusing to submit to the jury MAI–CR3d 310.08. That instruction reads:

310.08 PRESENCE AT OR NEAR THE SCENE

The presence of a person at or near the scene of an offense at the time it was (committed) (attempted) (committed or attempted) is alone not sufficient to make him criminally responsible for the offense, although his presence may be considered together with all of the evidence in determining his guilt or innocence.

The *Notes on Use* indicate that the instruction should be given if requested in proper form by the defendant or by the state, and that it should be refused if there is not direct or circumstantial evidence defendant was at or near the scene of the offense at the time it was committed.

Ignored by Bland in his argument on this point is *State v. Rice,* 689 S.W.2d 760 (Mo. App. 1985). Interpreting MAI–CR3d 3.66, the identical predecessor to MAI–CR3d 310.08, the court there ultimately held the instruction was required only in those cases where accessorial liability is in question. *Id.* at 763. The opinion's conclusion was based on an examination of the origins of 3.66. *Id.* This Court agrees with the Eastern District's holding. Because there was no evidence which could characterize Bland's role in this crime as accessorial, there was no error in refusing to submit this instruction to the jury. The point is denied.

■ Bland's third and final point on appeal addresses his sentencing. The trial court ordered consecutive sentences for the rape and sodomy convictions, and ordered that the concurrent sentences on the other four charges be served consecutive to those. Bland argues that the court has misinterpreted § 558.026.1, RSMo 1986, so as to require consecutive sentences for the rape and three sodomy convictions. He wants the case remanded for sentencing.

At the outset it should be noted that nothing in the record on appeal supports his contention the trial judge somehow misinterpreted the statutory section or felt he was required to order consecutive sentences. In *State v. Webb,* 737 S.W.2d 197, 200–03 (Mo.App. 1987), an opinion by Judge Turnage addressed the *state's* contention that the sentences for three sodomy convictions should have been made to run consecutively. There were no non-sex convictions against Webb, and the trial court had not specified whether the sentences were to be served concurrently or consecutively. *Id.* at 198. In analyzing the statutory language of § 558.026.1, the court noted eastern district cases holding sentences for sex crimes committed at the same time must run consecutively. *Id.* at 201. The *Webb* opinion concluded § 558.026.1 requires consecutive sentences for the specified sex crimes only when they were committed at the same time as a crime that was not one of the specified sex crimes. *Id.* at 201–02. Here, of course, there are convictions for crimes other than the sex crimes which were committed at the time of the sex crimes. Were a remand for resentencing in light of *Webb* ordered the imposition of consecutive sentences on the rape and three sodomy counts would logically follow. Since consecutive sentences have already been imposed for the sex crimes, a

remand is unnecessary. This point is denied.

The judgment of the trial court is affirmed.

All concur.