THE STATE v. MARTIN RUMFELT, Appellant.

**Division Two, May 26, 1910.**

1. **MURDER: Sufficient Evidence: Circumstantial: Conflict.** It is for the jury to settle any conflict in the testimony; and though the evidence tending to show defendant's guilt is circumstantial and though the verdict convicts him of murder in the first degree, yet if it is substantial the Supreme Court will not disturb the verdict on the ground that it is insufficient.

2. **CROSS-EXAMINATION: Defendant as Witness.** A cross-examination of defendant as to matters referred to or necessarily embraced within the questions propounded and answers given in his examination in chief, is not improper.

3. **TESTIMONY: Irrelevant Matters: Exclusion.** Questions and answers concerning an irrelevant matter which develop no evidence either for or against defendant, especially where the trial court specifically directs the jury they must not consider such matters, are not error.

4. **MURDER: Of Brother: Double Presumption of Innocence.** An instruction telling the jury that defendant is entitled to an additional presumption of innocence due to the fact that deceased was his brother, is unauthorized; but having been asked by defendant and given, it was error in his behalf and he cannot complain.

5. ————: **Of First Degree: Instructions for Lower Grade.** Where upon the facts as developed at the trial defendant is guilty of murder in the first degree if guilty at all, the instructions are properly confined to that degree of the offense, and the court is not justified in giving instructions upon any lower degree, and defendant cannot be heard to complain that instructions submitting lower degrees of the offense were not given.

6. **REMARKS OF COUNSEL: Not Preserved.** Complaints of improper remarks of counsel for the State made during the argument of the case, preserved only in the motion for a new trial, cannot be reviewed on appeal.

7. **IMPEACHING JUROR: Verdict Not Based on Evidence.** Affidavits in support of the motion for a new trial tending to show that one of the jurors made statements in the presence of certain persons that "it was not the evidence given in court in the trial of the case that the jury convicted him on, but on what they heard outside of court, and that there was some evidence they would not allow to be given in court," amount to nothing more or less than an offer to use the statements of a juror for the purpose of impeaching the verdict. A juror cannot make affidavits or statements impeaching the verdict of a jury of which he was one.

8. **MURDER: Reviewing Case: No Counsel.** Though defendant is not represented by counsel in the Supreme Court on an appeal from a judgment convicting him of murder in the first degree, the court will carefully examine the record with the view of discovering any reversible error committed at the trial to which exception was taken, and also the sufficiency of the information.

Appeal from Ripley Circuit Court.—*Hon. J. C. Sheppard*, Judge.

AFFIRMED.

*Elliott W. Major*, Attorney-General, and *James T. Blair*, Assistant Attorney-General, for the State.

(1) The information was not assailed before verdict. The motion in arrest questions its validity. The information charges every element of murder in the first degree. State v. Evans, 158 Mo. 592; State v. Gray, 172 Mo. 434. (2) The evidence tended to show that appellant murdered his brother while he slept. Whatever conflict of evidence there was, was settled by the verdict of the jury. State v. Miller, 188 Mo. 379; State v. McGee, 188 Mo. 409; State v. Smith, 190 Mo. 723. (3) Numerous exceptions were taken to rulings which were too clearly correct to require discussion. (a) Many of the objections were "in the stereotyped form so often condemned" as insufficient. State v. Harris, 199 Mo. 723; State v. Pyles, 209 Mo. 632; State v. West, 95 Mo. 149. (b) In excepting to

the exclusion of evidence appellant's counsel in several cases failed to advise the court what the desired evidence was. State v. Foister, 202 Mo. 48; State v. Page, 212 Mo. 237. (c) In other cases the answer was in when the objection was made. State v. Sykes, 191 Mo. 79; State v. Harris, 199 Mo. 723. (d) The state of feeling between appellant and deceased was competent. Underhill on Crim. Ev., secs. 323, 330. (e) The cross-examination of appellant as to the shells was proper. They had been referred to in the direct examination. The cross-examination as to the time of appellant's return to the home was also proper. So was the examination of the appellant as to the lacings of his shoes. State v. Myers, 221 Mo. 612. (f) The questions put to Fugate relative to certain letters, elicited no evidence for or against appellant. In addition, the court specifically advised the jury that they must not consider the questions and answers concerning the letters. The questions were in nowise harmful in the first place. (4) Instruction 1 as to (a) motive, (b) 2 as to the presumption of innocence, (c) 3 and 11 as to conviction on circumstantial evidence, (d) 4 and 10 as to reasonable doubt (when read together), (e) 5 as to previous good character, (f) 6 as to statements of appellant, (g) 7 as to appellant's testimony, (h) 8 as to the credibility of the witnesses, (i) 9 defining terms, (j) 12, as to the substance of the offense, are all in proper and approved form. (a). State v. David, 131 Mo. 396; State v. Foley, 144 Mo. 620. (b). State v. Grant, 152 Mo. 64. (c). State v. Moxley, 102 Mo. 388. (d). State v. Nueslein, 25 Mo. 123; State v. Paxton, 126 Mo. 508; State v. Whalen, 98 Mo. 226. (e). State v. Brooks, 92 Mo. 556. (f). State v. Tobie, 141 Mo. 561. (g). State v. McQuire, 69 Mo. 202; State v. Maupin, 196 Mo. 175. (h). State v. Martin, 124 Mo. 521; State v. Mounce, 106 Mo. 229. (i). State v. Harrod, 102 Mo. 597; State v. Harper, 149 Mo. 520. (j). State v. Thomas, 78 Mo. 342. The instruction as

to an additional presumption of innocence, arising from the relationship between appellant and deceased, was error in appellant's favor. State v. Grant, 152 Mo. 68; State v. Soper, 148 Mo. 217. The complaint in the motion for new trial that the court erred "in not giving instructions . . . covering the whole law of the case," is unfounded, in the first place, and, besides, no request for further instructions was made. This ground cannot be considered. State v. Palmer, 161 Mo. 171; State v. Bond, 191 Mo. 563; State v. West, 202 Mo. 137; State v. McCarver, 194 Mo. 742. (5) Appellant complains in his motion for new trial of certain alleged remarks of counsel for the State, asserted in the motion to have been made during the argument of the case. There is nothing in the record, outside the motion, supporting this assignment. It cannot be reviewed. State v. Meals, 184 Mo. 260. The affidavits were merely an effort to use the statement of a juror for the purpose of impeaching his verdict. The trial court quite properly gave no heed to it. State v. Cooper, 85 Mo. 261; State v. Rush, 95 Mo. 205; State v. Sprague, 149 Mo. 424.

FOX, J.—This cause is pending upon appeal on the part of the defendant from a judgment of the circuit court of Ripley county, Missouri, convicting him of murder of the first degree.

On the 16th day of February, 1909, the prosecuting attorney of Ripley county filed in the circuit court an information charging appellant with murder in the first degree. At the March term of court appellant waived formal arraignment and entered his plea of not guilty. A jury was forthwith impaneled and sworn and the trial proceeded.

The evidence on the part of the State tended to show that during the year 1908 defendant and his brother, the deceased, lived together, "batched," as the witnesses put it, on a farm in Ripley county, Missouri.

Defendant had conveyed his four-fifths interest in the land to deceased; the remaining one-fifth interest belonged already to deceased. The brothers had not been in complete accord concerning their business affairs, and their treatment of each other, according to the witness Moore, their brother-in-law, had not been entirely brotherly for sometime.

On November 12, 1908, some twelve hours prior to the death of Andrew Rumfelt, he and defendant were observed "not to appear right, like they had at other times," and it was noticed that they did not speak to each other.

At about 11 p. m., November 12, 1908, W. A. Moore was aroused by defendant repeatedly calling his name. Moore arose and at his kitchen door met defendant, gun in hand. Defendant told his brother-in-law that he was awakened by the report of a gun; that he supposed his brother was shooting at a stray dog, probably; that he felt to see if his brother was in bed and at that moment a second shot was fired into the bed near his, defendant's head; that he threw back the covers, sprang out of bed, seized his gun and fired, but "did not know which way he shot;" that he got more shells from the mantel, spilling others upon the floor, reloaded his gun and fired at the form of a man going out the door, but "didn't know whether he killed anyone or not." This recital defendant repeated to others later that night.

Defendant was nervous and excited and urged his brother-in-law to go back with him at once to see whether his brother had been killed and whether he had killed anyone with the shots he said he had fired. Moore took defendant's gun from him and unloaded it, taking out a "New Club" shell. Moore then induced defendant to come into the house and then it appeared that he was fully dressed save that he was wearing no hat and that his shoes, though laced to the top, were untied.

By means of the telephone Moore summoned some of his neighbors. To these defendant told his story substantially as he had done to his brother-in-law. Defendant, his brother-in-law and the neighbors who had gathered in, went to the Rumfelt house and there found Andrew Rumfelt dead. The outer door was fastened with a chain. A charge of shot had passed entirely through the head of deceased, having entered about two inches above the left ear and having passed out of the head on the right side, the wound of exit being about six inches long. The left side of deceased's face was powder burned; some of the shot had lodged in the pillow beneath the dead man's head. Another charge had been fired into the end of the pillow slip on the side of the bed not occupied by deceased, passing through the bed and into the wall beneath. Deceased, when found, was lying on his back with his arms folded, the bed covers being "snugly drawn up over him" and "tucked under him on both sides." There were no indications that any one save deceased had occupied the bed that night. The wound in the head was the only evidence of violence on the body of the deceased. An empty "Robin Hood" shotgun shell was found near the head of the bed and an empty "New Club" shell near the door. These shells had the appearance of having been recently fired and were of the same kind and caliber as other loaded shells found in the belt belonging with the defendant's gun and also in a box on the mantel. The "Robin Hood" shell found was like one which Andrew Rumfelt was seen to place in the gun the day before. There was no indication in the room that more than three shots had been fired, though, according to defendant's first story, his unknown assailant had fired two, and he, defendant had fired two. Defendant, while in jail, had an empty shell burned. Defendant, sometime after the killing, stated that he fired only one shot and fired that at a form in the doorway. It appeared that the charge

which struck the wall near the door could not have struck where it did had the door been open. The gun identified by defendant as the one used by him on the night of the killing was in evidence, and it was shown that the empty shells found on the floor had been fired from this gun; the impression made by the plunger on the shells in question being somewhat to one side of the usual position, and the plunger on the gun used by defendant being loose in such a way as to strike shells fired by it as those in evidence were struck.

There was also evidence tending to show that in order for the fatal charge to strike deceased as it did it must have passed within an inch of the pillow on which defendant asserted he was lying when his brother was killed. There was other evidence for the State, however, tending to disprove this. The bedding and pillows on the bed on which deceased lay when killed were burned by one of appellant's counsel, and the witness, Moore.

On cross-examination some of the State's witnesses stated that defendant's reputation for peace and quiet was good.

For defendant, J. L. Robinson testified that he and Moore publicly burned the bedding, he having been employed by defendant to clean up the premises for a tenant to whom defendant had leased them. He offered to let Moore have any of the household goods he might want. The bedding was old, dirty and bloody. The sole motive in burning it was "to get rid of it." There was no intent to destroy evidence. Witness said he "expected," if he "had been prosecuting attorney, he would have taken care of those pillows," adding, "I didn't need them in my business." Witness admitted he knew he was destroying "competent, legal evidence," and added that he "was representing the other side," being one of defendant's counsel.

In his own behalf defendant testified that he did not shoot his brother and did not know who did. He admitted that most of the statements attributed to him by the State's witnesses were correct, except that he declared he had not said he fired two shots. Defendant then testified in substance to the same facts he had stated on his arrival at Moore's, with the exception noted above, and with the further exception that he added that when he fired his gun the door had been drawn suddenly shut. He explained his failure to investigate his brother's condition before going to Moore's by saying that to have done so would have exposed him to a shot through the window. He said that he left the house by the back door, went to the corner of the house and saw that the front gate was open, but saw no one. He then went to Moore's. He said he made no outcry before reaching Moore's, fearing that his unknown assailant would pursue and shoot him. Defendant declared he and the deceased had never had any difficulty with each other.

At the close of the evidence the court instructed the jury upon murder of the first degree, reasonable doubt and upon all other subjects to which the testimony was applicable. The cause was then submitted to the jury and they returned their verdict finding the defendant guilty of murder in the first degree and fixed his punishment at imprisonment in the penitentiary for life.

Timely motions for new trial and in arrest of judgment were filed and by the court taken up and overruled. Sentence and judgment were rendered in conformity to the verdict returned by the jury. From this judgment defendant prosecuted this appeal and the record is now before us for consideration.

## OPINION.

Defendant is not represented in this court; however, in compliance with the provisions of the statute, we have carefully analyzed the disclosures of the record, with the view of giving expression to our opinion as to whether or not there was any reversible error committed by the trial court in the disposition of this cause.

### I.

Prior to the trial and return of the verdict learned counsel for appellant did not challenge the sufficiency of the information in this cause; however, the motion in arrest of judgment does question the validity of the information. Directing our attention to this point it is sufficient to say that we have carefully analyzed the charge as embraced in the information, and in our opinion it charges every essential element of the offense of murder of the first degree, and the offense is charged in a form and manner that has repeatedly met the approval of this court. [State v. Evans, 158 Mo. 589; State v. Gray, 172 Mo. 430.]

### II.

The sufficiency of the evidence as disclosed by the record to authorize the conviction of the defendant is challenged. Upon this proposition it is only necessary to say that we have indicated the nature and character of the testimony upon which this cause was submitted to the jury. While it may be said that the testimony tending to establish the guilt of the defendant is purely circumstantial, yet when it is fully considered, in our opinion, it fully supports the verdict as returned by the jury.

This cause is no exception to the general rule that in cases of this character there is usually a conflict in the evidence, and it is specially the province of the

jury to determine that conflict. The general rule, which is thoroughly established in our jurisprudence, is that where there is substantial testimony showing the guilt of the defendant this court will not undertake to disturb the verdict. No one can read the details of the testimony as disclosed by the record in this cause and escape the conclusion that this defendant was the slayer of his brother.

Finding that there is substantial evidence which fully supports the conclusion as reached by the jury, we shall not undertake to retry this cause upon the disclosures of the record and undertake to determine whether the jury properly determined the cause upon the evidence. The trial court and the jury had opportunities of determining the credibility of the witnesses and the weight to be attached to their testimony that are not afforded the appellate court, therefore we decline to interfere with the verdict on that ground. [State v. Miller, 188 Mo. l. c. 379; State v. McGee, 188 Mo. l. c. 409; State v. Smith, 190 Mo. l. c. 723].

### III.

We have carefully considered the disclosures of the record as to the action of the court in the admission and rejection of testimony, and it is sufficient to say that we find there was no error along that line. The trial court seemed to have been very careful in the admission and rejection of evidence, and the assignment of error upon the action of the court in the admission and rejection of evidence must be ruled adversely to the appellant.

### IV.

The motion for a new trial alleges as one of the grounds for such motion an improper cross-examination of the defendant while a witness upon the stand. We have examined the record upon that proposition

and find that the cross-examination was entirely appropriate; it was as to matters referred to or at least necessarily embraced within the questions propounded and answers given in the examination in chief. The comparatively recent case of State v. Myers, 221 Mo. 1. c. 612, 613, very clearly announces the true rule as applicable to this proposition, and fully supports the cross-examination of the defendant upon the subjects in the case at bar.

## V.

It is complained in the motion for new trial that the court committed error in permitting counsel to ask questions of witness Fugate relative to certain letters. We have examined the disclosures of the record upon that proposition and have reached the conclusion that the questions and answers so far as the letters were concerned did not develop any evidence either for or against appellant. But aside from this, the court specifically directed the jury that they must not consider the questions and answers concerning the letters. In our opinion the inquiry as to the letters did not in any way prejudice the rights of the defendant to a fair and impartial trial.

## VI.

This brings us to the consideration of the instructions given by the court at the close of the evidence in this cause. We have carefully analyzed the declarations of law embraced in the instructions, and it is only necessary to say that in our opinion whatever error was committed was in favor of the defendant. The instructions as to motive, upon the presumption of innocence, upon circumstantial evidence and reasonable doubt and previous good character and as to statements of appellant, as well as the instruction upon the weight to be attached to appellant's testimony, the credibility of witnesses and the definition of the terms

essential to constitute the offense of murder of the first degree were all in form with precedents which have repeatedly met the approval of this court.    [State v. David, 131 Mo. l. c. 396; State v. Grant, 152 Mo. l. c. 64, 70, 71; State v. Moxley, 102 Mo. l. c. 388; State v. Nueslin, 25 Mo. l. c. 123; State v. Paxton, 126 Mo. l. c. 508; State v. Maupin, 196 Mo. l. c. 175; and numerous other cases.]

The instruction given in behalf of the defendant as to the additional presumption of innocence arising from the relationship between appellant and deceased was unauthorized; however, that was an error in appellant's favor of which he has no right to complain. [State v. Grant, 152 Mo. l. c. 68, 71; State v. Soper, 148 Mo. 217.]

## VII.

There is no merit in the complaint in the motion for new trial that the court committed error in not giving other instructions covering the whole law of the case.    Upon the facts as developed upon the trial of this cause if the defendant was guilty he was guilty of murder of the first degree, and the instructions were properly confined to that degree of the offense.    Upon the facts the court would not have been justified in giving instructions upon any lower grades of the crime. [State v. Palmer, 161 Mo. l. c. 171; State v. Bond, 191 Mo. l. c. 563; State v. West, 202 Mo. l. c. 137; State v. McCarver, 194 Mo. l. c. 742.]

## VIII.

We find that the motion for new trial complains at certain remarks of counsel for the State made during the argument of the case.    It is sufficient to say of this complaint that the record fails to disclose anything to support this assignment outside of the motion for new trial; hence, it necessarily follows the com-

plaint is not before us for review. [State v. Meals, 184 Mo. l. c. 259, 260.]

## IX.

It is finally insisted that the verdict as returned in this cause is the result of passion, prejudice and partiality. Accompanying the motion affidavits were filed tending to show that one of the jurors, Ed. Mc-Christian, made statements in the presence of certain persons that ''it was not the evidence given in court in the trial of the case that the jury convicted him on, but on what they heard outside of court, and that there was some evidence that they would not allow to be given in court.''

These affidavits in their last analysis amount to nothing more nor less than an effort to use the statement of a juror for the purpose of impeaching the verdict of a jury, and the trial court very properly did not in passing upon the motion attach any importance to these affidavits. It has been firmly settled in the juris-prudence of this State that a juror upon the panel trying a cause cannot make affidavits or statements impeaching the verdict as returned by the jury. [State v. Cooper, 85 Mo. l. c. 261; State v. Rush, 95 Mo. l. c. 205; State v. Sprague, 149 Mo. l. c. 424, 425.]

## X.

We have given expression to our views upon the complaints as disclosed by the record, and, as before stated, we have not been favored by any suggestions on the part of the appellant as to the complaints made in the motion for new trial; yet this case being one of such a serious character we have given most careful attention to the disclosures embraced in the record and have reached the conclusion that there was no error committed by the court in the trial of this cause which in any way prejudiced the rights of the defendant to a fair and impartial trial.

We repeat that, upon a careful analysis of the evidence as detailed by the witnesses, we see no escape from the conclusion that the deceased met his death at the hands of the defendant. The facts as developed upon the trial fully support the conclusion as reached by the jury. The judgment of the trial court should therefore be affirmed. All concur.