**STATE of Missouri, Respondent,**

v.

**Kenneth Lowell GORDON, Appellant.**

**No. 50757.**

Supreme Court of Missouri,

Division No. 1.

June 14, 1965.

William H. Costello, Kansas City, for appellant.

Norman H. Anderson, Atty. Gen., Jefferson City, William O. Sawyers, Jr., Sp. Asst. Atty. Gen., St. Joseph, for respondent.

WELBORN, Commissioner.

Kenneth Lowell Gordon appeals from a judgment and sentence of the Jackson County Circuit Court of ten years' imprisonment on a charge of assault with a deadly weapon with malice. Section 559.180, RS Mo 1959, V.A.M.S.

On October 16, 1963, Steven Wayne Bellew, an employee of the Automatic Canteen Company, was driving a truck used to service vending machines. He stopped at the Western Auto Company building at 20th and Grand in Kansas City and entered the building to service machines. Upon returning to his truck, he saw a man whom he identified as Kenneth Lowell Gordon standing near his truck. Gordon pulled a gun and ordered Bellew to "come here." Bellew entered the truck as did Gordon. At Gordon's direction Bellew lay face down on the floor of the truck and then another person entered the vehicle. After obtaining the keys from Bellew, the other person drove the truck away. Gordon asked Bellew for the money and Bellew gave Gordon a key to a safe located in the floor of the truck. After the truck had been driven a short distance to the vicinity of 20th and Walnut Streets, it was stopped. One of the two other persons in the truck reached in Bellew's pocket and removed his billfold.

The person who did so took Bellew by the right shoulder, pulled him over on his side and shot him through the chest just over the heart. The two intruders then left the truck. Bellew staggered from the vehicle and sought assistance. Bellew recovered from the injury he sustained.

On October 26, 1963, Gordon was arrested in Omaha, Nebraska, and was returned to Kansas City where Bellew identified him in a police line-up as his assailant. The charge on which this conviction was based was subsequently filed.

On this appeal two matters are urged as error. The first relates to the interrogation of two state witnesses regarding prior statements which they allegedly made. The second relates to the introduction in evidence of a pistol identified by a ballistic expert of the Kansas City Police Department as having been the weapon used to fire the shot which injured Bellew. With respect to the first matter, a member of the Omaha Police Department testified concerning Gordon's arrest in that city. He also testified that Gordon told him he had been accompanied to Omaha by James Fisher, Charles Garrett and a Donald Henderson.

Another witness for the state testified that, around the time of the crime, he observed a new model Pontiac convertible bearing Michigan license FL-8399 in the vicinity of 20th and Grand. He stated that he saw four persons in the automobile at one time and at another time two persons. He could not identify Gordon as being one of the occupants of the car, but he did testify that the occupants were colored. Gordon is a Negro.

The state called as a witness one Walter Fisher. Although the transcript is not clear, Walter Fisher may have been the same person as James Fisher who had accompanied Gordon to Omaha. After testifying to his name, his address and the fact that he knew Gordon, Fisher was asked a series of questions regarding his ownership of a 1962 Pontiac convertible and whether

or not Michigan license FL–8399 had been attached thereto. In response to all of these inquiries the witness refused to answer "on the grounds I might tend to incriminate myself." The prosecuting attorney had marked as an exhibit a statement purportedly given by the witness to a police officer at some prior date. The witness declined to identify the statement again on the grounds it might tend to incriminate him. The prosecuting attorney proceeded to read the questions found in the statement together with the answers. Following each question and answer, the prosecutor asked the witness, "Did you make that answer to that question?" to which the witness to a series of some six preliminary questions replied, "I refuse to answer on the grounds I might tend to incriminate myself." Thereupon the prosecutor asked: "Was this question asked of you: 'Question: Are you familiar with a 1962 Pontiac convertible, aquamarine color, bearing Michigan license FL–8399?' and did you give this answer: 'Yes, this is my license number, I had on my car on October 16, 1963.' Did you give that answer to that question?" "A. I refuse to answer on the grounds I might tend to incriminate myself." The defendant's attorney objected to this line of questioning. The court stated that he felt that there were some matters in the statement which should be omitted in the questioning, but advised the prosecuting attorney that he might inquire as to the questions which the court had marked. The defendant's attorney restated his objection, which was overruled, and a continuing objection was made to further questioning. After repeating the question last referred to, the prosecuting attorney asked the witness: "I want to ask you now, was this question asked of you: 'Were you in possession of your car on that date?' and did you give this answer, 'No, I had loaned it to Donald Henderson, who lives in the 24 hundred block on Troost'?" The witness again refused to answer on the grounds that it might tend to incriminate him. Whereupon the prosecuting attorney asked the following question: "Was also this question asked

of you: 'Question: I am showing you two 1963 Michigan license No. FL–8399 and ask you if these are the license plates that were on your 1962 Pontiac on October 16, 1963, when you loaned it to Donald Henderson about 11:00 a. m. on that date.' And did you give this answer to that question: 'Answer: Yes.'" Again the witness refused to answer on the grounds of self-incrimination. The witness was thereupon excused.

Another state's witness, Cynthia Wynn, after giving her name and address, likewise refused to answer further questions on the grounds of self-incrimination. A similar procedure was followed by the prosecuting attorney who read questions propounded to the witness and answers she had allegedly given in a previous interrogation by the prosecuting attorney in his office prior to the trial. When asked whether or not she had made such answers to the questions, in each case she declined to answer on the grounds of self-incrimination. This witness's statement related primarily to her possession of a pistol which the defendant had given her sometime after October 16, 1963. Another state's witness had testified that Cynthia Wynn had given her a pistol around October 29. This pistol was taken from the latter witness upon her arrest for shoplifting and was subsequently identified as the pistol used in the assault on Bellew.

Subsequently the court, apparently on reading the prior statements of the witnesses, concluded that by giving such statements the witnesses had waived their right to claim the privilege against self-incrimination. He so advised counsel. Cynthia Wynn was subsequently recalled as a witness and, upon claiming the privilege against self-incrimination, was directed by the court to answer the questions propounded to her. She did so, although obviously in a reluctant fashion, and testified to little, if any, of benefit to the state. She did testify that Gordon had given her a pistol although she could not identify the weapon introduced in evidence as the pistol which Gordon had given her. She also testified

that she had returned the pistol to Gordon prior to the time that he went to Omaha.

On this appeal appellant contends that the procedure employed in the interrogation of witnesses Fisher and Wynn denied the defendant the right of confrontation of the witnesses against him in violation of Section 18(a) of Article I of the Constitution of Missouri, 1945, V.A.M.S., and the Sixth and Fourteenth Amendments to the Constitution of the United States.

The state on this appeal concedes that the procedure followed in the trial court "could probably be held erroneous." Of this we have no doubt. A party calling a witness when surprised by affirmative evidence which aids the opposing party may cross-examine that witness to show that he had given former statements contrary to his testimony. However, where a witness merely fails to testify in favor of the party calling him, he cannot be cross-examined or impeached by such party. Randazzo v. United States, 8 Cir., 300 F. 794. See State v. Gregory, 339 Mo. 133, 96 S.W.2d 47. Here, as to the witness Fisher, there is no basis for his impeachment by use of the prior inconsistent statements because he gave no testimony. He merely refused to testify. It is obvious that the object of the examination by the use of the prior statement given by the witness was not to impeach the witness but to obtain the benefit of the statements which the witness had previously made. That this is a denial of the constitutional right of a defendant to confront witnesses against him is clear under the recent decision of the United States Supreme Court in Douglas v. State of Alabama, 380 U.S. 415, 85 S.Ct. 1074, 13 L.Ed. 2d 934.

The state would avoid the effect of the ruling in that case on the grounds that no prejudice resulted to the defendant from the matters contained in the statements of Fisher. However, examination of the entire record convinces us that the matters were significant and were relied upon by the state to establish the guilt of the appellant. The state sought to show that the appellant was a friend of Henderson and that Henderson had Fisher's automobile in the vicinity of 20th and Grand at the time of the crime. That the state considered this evidence significant is pointed out by the prosecuting attorney's closing argument wherein he stated: "Sergeant Hug testified. I told you in my opening statement I was bringing him down here for one purpose, to show to you, give you evidence that this defendant and Henderson ran together. We heard this not only from Sergeant Hug but we also heard it from the defendant himself. He took the stand and he told you that he went to Omaha with Henderson. Why? Because Henderson is the one that had the car." He further argued: "Fisher is the one that had the car with the license plate on it, FL–8399, that was seen in the area of the shooting by Mr. Curd, loaned the car to Henderson, all three of these boys went to Omaha together." Further he argued: "Anyway, Tommy Curd told you that he saw this late model Pontiac convertible with the license plate Michigan FL–8399 right down there in the area. This is the same type of car that Fisher *says* he loaned Henderson. This is the same license plate that Fisher had on his car. So we know the car was there. So this all ties it together. This shows the fact that at least as far as Fisher *says* and tells you, that one of this boy's running mates had a car." (Emphasis ours).

Evidence that Fisher owned a Pontiac convertible bearing the license plate in question and that he loaned it to Henderson can be found only in the answers given by Fisher to the statement used in examining him. Even had Fisher testified otherwise, as he did not, and the prior statement had been used to impeach him, the matters stated in the prior statement would have no probative value of such matters stated and could be used only for the purpose of impeachment. State v. Kinne, Mo.Sup., 372 S.W.2d 62, 67–70(6).

Here the state obviously attempted to use the statements of Fisher as evidence de-

spite the objection of defendant's counsel. The repeated reference to the matters referred to in the prosecuting attorney's closing argument clearly shows that they are not, as the state contends on the appeal, matters of no significance. They were used to prove the presence of the defendant at the vicinity of the offense and the use of such statements as evidence over the objection of defendant's counsel is clearly erroneous.

■ As for the second objection on this appeal regarding the identification of the pistol, the defendant testifying in his own behalf admitted that he had given the pistol to Cynthia Wynn. Teresa Johnson in whose possession the pistol that was introduced in evidence was found testified that she had received the weapon from Cynthia Wynn. Ballistic tests showed that the pistol introduced in evidence was the one which fired the shot which injured Bellew. When Cynthia Wynn finally testified, she could not identify the weapon introduced in evidence as the one which the defendant had given her, but stated she had returned that weapon to the defendant prior to his going to Omaha.

On this state of the record we would not declare that the admission in evidence of the pistol was error. It was identified by a ballistic expert as the weapon which fired the shot. Teresa Johnson testified that she had obtained the weapon from Cynthia Wynn. Cynthia Wynn was called as a witness by the state although she was obviously a very reluctant one. She admitted she had received a weapon from the defendant, but had returned it to him. The state was not bound by her testimony that the weapon had been returned to the defendant. State v. Jones, 363 Mo. 998, 255 S.W.2d 801, 804–805(4, 5). Under all of the circumstances the jury could reasonably have believed that Cynthia Wynn had, as Teresa Johnson testified, given the weapon to her and in view of testimony that a weapon had been given to Cynthia Wynn by the defendant that such weapon was the weapon actually introduced in evidence. State v. Lindner, Mo.Sup., 282 S.W.2d 547, 552.

The judgment is reversed and the cause remanded for a new trial.

HOUSER and HIGGINS, CC., concur.

PER CURIAM.

The foregoing opinion by WELBORN, C., is adopted as the opinion of the Court.