STATE of Missouri, Respondent,

v.

David S. FRANCO, Appellant.

No. 59623.

Supreme Court of Missouri,
en banc.

Dec. 13, 1976.
Rehearing Denied Jan. 10, 1977.

William E. Shull, Kansas City, for appellant.

John C. Danforth, Atty. Gen., Philip M. Koppe, Asst. Atty. Gen., Jefferson City, for respondent.

DONNELLY, Judge.

This case was transferred here by the Missouri Court of Appeals, Kansas City District, and we decide it the same as on original appeal. Mo.Const. Art. V, § 10. The facts of the case, as they appear in the principal opinion written in the Court of Appeals (Somerville, J.) are set forth with minor changes without quotation marks. That portion of this opinion which deals with the sufficiency of the evidence to sustain the convictions was also written by Judge Somerville and is adopted here, substantially as originally written, without quotation marks.

On February 6, 1974, appellant was charged in a two-count indictment with conventional murder in the first degree of Terry C. Ott and Linda Kay Baber. Appellant's trial began on July 15, 1974. On July 19, 1974, a jury found him guilty under both counts of the indictment of the lesser included offense of murder, second degree.

In view of the jury's inability to agree upon his punishment, the court sentenced him to confinement in the Missouri Department of Corrections for a term of twenty-five years on each count and ordered said sentences to run consecutively.

Appellant challenges the sufficiency of the evidence to support the guilty verdicts returned by the jury, attacks the failure of the trial court to have instructed the jury on manslaughter, and levels two charges of error with respect to certain evidentiary rulings.

The evidence relied upon by the state, insofar as germane to any issues on appeal, was almost entirely circumstantial in nature, and substantially identical as to both counts of the indictment. Certain established principles bearing on appellate review, as well as the elements of murder, second degree, warrant mention as a prologue to determining whether there was sufficient substantial evidence to support the guilty verdicts of murder, second degree, returned by the jury. First, the facts in evidence and all favorable inferences reasonably to be drawn therefrom must be considered in the light most favorable to the state and all evidence and inferences to the contrary must be disregarded. *State v. McGlathery*, 412 S.W.2d 445, 447 (Mo.1967); and *State v. Chase*, 444 S.W.2d 398 (Mo. banc 1969). Second, when the state's case rests upon circumstantial evidence, "the facts and circumstances must be consistent with each other and with the hypothesis of defendant's guilt, and they must be inconsistent with his innocence and exclude every reasonable hypothesis of his innocence." *State v. Ramsey*, 368 S.W.2d 413, 416 (Mo. 1963). See also: *State v. Thomas*, 452 S.W.2d 160, 162 (Mo.1970). Third, the prevailing circumstantial evidence rule, supra, is realistically tempered in its application since "[i]n a case involving circumstantial evidence the circumstances need not be absolutely conclusive of guilty, and they need not demonstrate impossibility of innocence[;] . . . the mere existence of other possible hypothesis is not enough to

remove the case from the jury." *State v. Thomas*, supra, at 162. See also: *State v. Taylor*, 445 S.W.2d 282 (Mo.1969); and *State v. Maxie*, 513 S.W.2d 338 (Mo.1974). Fourth, the wilful, premeditated killing of a human being with malice aforethought constitutes murder in the second degree. *State v. Archer*, 328 S.W.2d 661, 665 (Mo.1959); *State v. Strong*, 339 S.W.2d 759, 764–765 (Mo.1960); and *State v. Anderson*, 375 S.W.2d 116, 119 (Mo.1964).

█ A review of the evidence relied upon by the state, substantially condensed from a lengthy transcript, now appears to be in order. On January 2, 1974, and for some time prior thereto, appellant possessed a key to certain dwelling house located at 6130 Cherry, Kansas City, Jackson County, Missouri, owned by Sherry _____. Sherry had given appellant the key in view of the intimacy of their relationship. On January 31, 1974, the bodies of Terry C. Ott and Linda Kay Baber were discovered by Sherry and two other friends under a pile of canvas awnings in the basement of her home (6130 Cherry). Terry C. Ott and Linda Kay Baber, who had been living together, were last seen alive on the morning of January 2, 1974. A forensic pathologist, who had performed autopsies upon the bodies of the victims, rendered an opinion that the two victims had been dead approximately "a month" when their bodies were discovered. Further, "Gunshot wounds to the chest with massive hemorrhage", in the opinion of the pathologist, was the cause of Terry C. Ott's death, and "Gunshot wound to the chest with massive hemorrhage", in the opinion of the pathologist, was the cause of Linda Kay Baber's death. During the course of the autopsy upon the body of Linda Kay Baber two .380 caliber bullets were removed, which, according to a ballistic expert, matched a bullet known to have been fired from a certain Llama .380 caliber automatic pistol introduced into evidence. Evidence disclosed that the automatic pistol had belonged to Ronald P. Palermo, a brother-in-law of appellant, but was stolen from Palermo's home around the middle of December, 1973. Appellant was aware of Ronald P. Palermo's ownership of the automatic pistol prior to its theft.

Appellant owed victim Terry C. Ott a sum of money approximating $2,000.00, and some two or three months prior to January 2, 1974, a heated dispute erupted between the two regarding repayment of the money.

At approximately 8:30 A.M. on the morning of January 2, 1974, appellant, in an attempt to contact Terry C. Ott, telephoned Linda Kay Baber's mother and asked her to get in touch with Terry and have him call appellant. Appellant gave Linda's mother a telephone number where Terry could reach him. The telephone number which he gave Linda's mother was the listed telephone number for Sherry's home at 6130 Cherry. A resident in the vicinity of 6130 Cherry testified that sometime between 9:00 A.M. and 1:15 P.M. on January 2, 1974, he heard what sounded to him like exploding "firecrackers".

At approximately 12:30 P.M. on January 2, 1974, Sherry was returning to her home from a 9 A.M. painting class when she encountered appellant at 63rd and Cherry Streets. Appellant stopped her and invited her to have lunch with him. After accepting appellant's luncheon invitation, she drove her car to her home at 6130 Cherry and appellant followed in his car. When she started to take her painting supplies into her home, appellant suggested that she leave them in her car and that they immediately proceed to a place for lunch. Sherry acquiesced and got into appellant's car.

When en route to a place for lunch, Sherry noticed some Indian jewelry in appellant's car. She admired a particular Indian belt buckle (with a stone missing from it) which was among the jewelry, whereupon appellant gave it to her. The belt buckle was identified and admitted into evidence. A brother of victim Terry C. Ott testified that the belt buckle had previously belonged to him but prior to January 2, 1974, he gave it to Terry. Sherry further testified that while riding in appellant's car en route to lunch on January 2, 1974, she observed a box in the back seat of his car which "smelled like marijuana". Although

she made inquiry of appellant as to the contents of the box, he refused to disclose its contents to her. Terry C. Ott was reputed to have been a "wholesaler" of marijuana.

Testimony disclosed that Terry C. Ott, prior to his death, regularly carried large sums of cash upon his person. When his body was discovered, no cash was found upon his person. Subsequent to January 2, 1974, but prior to January 31, 1974, appellant, in the company of several other persons, made a trip to California at which time he was observed to have a substantial amount of cash upon his person.

On the date the victims' bodies were discovered in the basement of Sherry's home at 6130 Cherry, a purse identified as belonging to Linda Kay Baber, partially concealed on a rafter in the basement, was found by investigating police officers. Appellant later told certain police officers that although he had been with Terry C. Ott and Linda Kay Baber several times prior to their deaths, he had never touched Linda Kay Baber's purse. A latent fingerprint was lifted from the purse discovered in the basement, which, according to expert testimony, matched an impression of appellant's left ring finger.

The jury in the instant case could reasonably infer from the concealment of the victims' bodies that they were intentionally killed under circumstances that could not be deemed justifiable or excusable, and that their deaths were not suicidal or accidental. The combined testimony of the pathologist and ballistic expert amply supported a finding by the jury that the victims' deaths were caused by a deadly weapon used upon vital parts of their bodies. Further, the jury could reasonably infer from the collective impact of the following evidence that appellant committed the homicides in question: (1) appellant's access to the basement of the dwelling house where the victims' bodies were found; (2) appellant's possession of an Indian belt buckle on the afternoon of January 2, 1974, which belonged to victim Terry C. Ott; (3) the presence of appellant's fingerprint on a purse belonging

to Linda Kay Baber, which was found partially concealed on a rafter in the basement where the victims' bodies were discovered; (4) appellant's presence on January 2, 1974, in the immediate area of the dwelling house where the victims' bodies were eventually found almost a month later; and (5) the fact that appellant left a message for victim Terry C. Ott to call him on the morning of January 2, 1974, at the dwelling house where the victims' bodies were found.

Although similar circumstantial evidence cases are not dispositive of the question of submissibility of this case, since each case must be considered in light of its own particular facts and circumstances, *State v. Maxie*, supra, a case resting entirely on circumstantial evidence, is worthy of mention. There, this Court affirmed a conviction for murder in the second degree where considerably less evidence existed from which the accused's guilt could be reasonably inferred than exists in the instant case. In *State v. Maxie*, supra, the only evidence that could arguably be said to connect the accused with the victim's death was the presence of his fingerprint on a box located in an apartment where the victim's body was found.

The reasonable inferences which the evidence presented by the state in this case permitted the jury to draw impel this Court to hold that there was sufficient substantial evidence to support the jury verdicts finding appellant guilty of murder, second degree, under both counts of the indictment.

■ Appellant asserts the trial court erred in failing to instruct on manslaughter. He contends "that the entire case presented against him was circumstantial evidence which introduced nothing that would indicate the reason the homicide occurred, or the facts and circumstances surrounding it. In the absence of such affirmative evidence, * * * a manslaughter instruction must be given as a matter of law by the court."

Appellant's contention finds support in the concurring opinion filed in *State v. Mudgett*, 531 S.W.2d 275, 283, 284 (Mo. banc 1975) in which *State v. Johnson*, 505 S.W.2d 94 (Mo.1974), was construed to hold that a

trial court is required to give a lesser homicide instruction in a "circumstantial-evidence" case.

In *State v. Holland*, 354 Mo. 527, 189 S.W.2d 989, 998 (1945), Division No. 2 of this Court said:

"We call special attention to the following cases: *State v. Dickson*, 78 Mo. 438; *State v. Kenyon*, 343 Mo. 1168, 126 S.W.2d 245; *State v. Taylor*, 347 Mo. 607, 148 S.W.2d 802; *State v. Rasco*, supra; *State v. Rumfelt*, 228 Mo. 443, 128 S.W. 737. In each of these cases the evidence was entirely circumstantial and convictions of first degree murder were sustained. In none of the cases was a second degree murder instruction given. In each case the court considered the question and decided that the circumstances disclosed first degree murder only and an instruction on second degree murder was properly refused."

The *Holland* statement of the law was expressly approved in *State v. Cuckovich*, 485 S.W.2d 16, 26 (Mo. banc 1972). If *Johnson* was intended to mean that a trial court is required to give a lesser homicide instruction in a "circumstantial-evidence" case, it must be overruled. The decision reached by the Court en Banc in *Cuckovich* may not be overruled by an opinion written in a Division of this Court. Appellant's assertion is without merit.

Appellant next asserts "the trial court erred in allowing witnesses Baber and Ewing to testify in that the court and state knew that said witnesses would refuse to testify under protection of the Fifth Amendment and said refusal was highly prejudicial to the defense and denied the defendant his right to cross-examination, all of which is guaranteed under the Fifth, Sixth and Fourteenth Amendments, United States Constitution, and Article I, Section 18(a), Missouri State Constitution."

■ This specific objection was not made at the trial when the questions were asked and answers given. It is not preserved for appellate review. *State v. Lang*, 515 S.W.2d 507, 511 (Mo.1974).

Appellant finally asserts "the trial court erred in allowing the state to impeach its own witness Palermo over the objection of the defendant without establishing a proper foundation and basis and using those facts as substantive evidence and said error denied the defendant his constitutional right to a fair trial and due process of law as guaranteed by the Fourteenth Amendment, United States Constitution, and Article I, Section 10, Missouri State Constitution."

■ The applicable law is well-established. "A party calling a witness when surprised by affirmative evidence which aids the opposing party may cross-examine that witness to show that he had given former statements contrary to his testimony." *State v. Gordon*, 391 S.W.2d 346, 349 (Mo.1965). "The extent of cross-examination on collateral matters for the purpose of impeachment is largely within the trial court's discretion * * *." *State v. Cox*, 352 S.W.2d 665, 673 (Mo.1961).

On direct examination, witness Ronald P. Palermo testified as follows:

"Q    And did you see how much money David Franco had with him in California?

"A    I did not actually see a certain amount, no, but he had enough for a vacation.

"Q    By that what do you mean?

"A    Anywhere from I think 800 to a thousand dollars.

"MR. DUNCAN: I will object to this, your Honor. If he didn't see it, enough, it's pretty nebulous. I will object. It is calling for a conclusion.

"THE COURT: Sustained."

On redirect examination, the state was permitted to show that Palermo had given a statement to the police that he observed appellant "to have approximately nineteen hundred dollars cash on his person." Under the law announced in *Gordon*, supra, the trial court did not err.

■ On cross-examination, Palermo testified that he was at Don Wormack's house at the time his mother called to tell him of the burglary at which the automatic pistol

was stolen. On redirect examination, the state was permitted to attempt to show that Palermo had told police he was at Michael Grady's house at the time. Appellant contends the state's attempt "did not go to a material matter." We do not believe the trial court abused its discretion in this regard. *State v. Cox*, supra.

Appellant's assertion that the state did not establish a proper foundation for impeachment is not preserved for appellate review. *State v. Lang*, supra.

The judgment is affirmed.

MORGAN, HOLMAN, HENLEY and FINCH, JJ., concur.

BARDGETT, J., dissents in separate dissenting opinion filed.

SEILER, C. J., dissents and concurs in separate dissenting opinion of BARDGETT, J.

BARDGETT, Judge (dissenting).

I respectfully dissent. As demonstrated by the principal opinion, this is purely a circumstantial evidence case and is, in my opinion, controlled by *State v. Johnson*, 505 S.W.2d 94 (Mo.1974), which was followed in *State v. Stapleton*, 518 S.W.2d 292 (Mo. banc 1975). See also my concurring opinion in *State v. Mudgett*, 531 S.W.2d 275, 283 (Mo. banc 1975). According to those cases, the court in the instant case was required to instruct on manslaughter and the failure to do so is reversible error.

ON MOTION FOR REHEARING

PER CURIAM:

Appellant's motion for rehearing is overruled.

■ The Court emphasizes that where conventional murder instructions are supported by the pleadings and evidence and are given, there must be an automatic submission of manslaughter. This requirement has been in effect since March 1, 1975 (see Notes on Use, MAI–CR 6.02). This case was tried prior to March 1, 1975.