**STATE of Missouri, Respondent,**

v.

**Lloyd W. GOODMAN, Appellant.**

**No. WD 31401.**

Missouri Court of Appeals,
Western District.

Nov. 3, 1980.

Motion for Rehearing and/or Transfer to Supreme Court Denied Dec. 2, 1980.

Application to Transfer Denied
Jan. 13, 1981.

Robert G. Duncan, Duncan, Russell & Reardon, Gladstone, for appellant.

John Ashcroft, Atty. Gen., Jefferson City, Darrell Panethiere, Asst. Atty. Gen., Kansas City, for respondent.

Before PRITCHARD, P. J., and SWOFFORD and TURNAGE, JJ.

TURNAGE, Judge.

Lloyd Goodman was found guilty by a jury of second degree murder and punishment was assessed at imprisonment for 55 years. On this appeal Goodman contends he was arrested without probable cause which made articles of clothing taken from him inadmissible, that the evidence was insufficient to sustain the conviction, and a picture of the deceased was improperly admitted in evidence. Affirmed.

About 7:10 A.M. on January 10, 1978, the body of George Lockmer was discovered by a parking lot attendant lying in the parking lot next to an alley. The victim was flat on his back with considerable blood around the head which formed a pool and had run toward the alley. The temperature the preceding night had been near zero. When the police arrived they found that Lockmer had been beaten to death with numerous blows to the head. In the alley near the body was found a sack of clothes in a brown shopping bag with the name "Goodman" hand lettered on it. They also found a cigarette case that contained a pack of cigarettes.

The police began a canvass of the area and visited the office of a labor pool which furnishes temporary labor to business. The manager of the labor pool told them that a man by the name of Goodman had been in about 6:00 A.M. wanting to work. He had blood on his clothing and hands and appeared to have been in a fight. He also appeared to be drunk, and for this reason he had not been sent on a job. The police requested the manager to call them if he saw this man again. About 9:30 A.M. the manager saw Goodman in the Bowling Green Tavern, which is in the immediate area where the body was found. The police were called and arrived shortly thereafter and placed Goodman under arrest.

The police learned during their investigation, prior to Goodman's arrest, that about 8:00 to 9:00 P.M. on the night before, Goodman had been in the El Sereno Tavern, which is about one–half block from the place where the body was discovered. He had a brown paper sack containing clothing. When Goodman became intoxicated the bartender called the police and two officers came to the tavern and escorted Goodman out but did not take him into custody. About midnight Goodman was in the Bowling Green Tavern, and he and two other drunks were removed by the police. Again, Goodman was not taken into custody. At that time Goodman did not appear to have any blood on his clothing and he had the sack of clothing.

About 3:30 A.M. Goodman was observed walking down Admiral Blvd., which is several blocks from the scene, and later entered a 7–11 Store at 17th and Indiana. One of the officers who had earlier removed

him from one of the taverns observed him in the store but did not notice any blood on his clothing. The officer did not see Goodman carrying the sack, but stated Goodman had stood behind a magazine rack and was blowing on his hands in an apparent effort to warm them.

When officers arrived at the Bowling Green Tavern at 9:30 A.M. they found Goodman with blood on his clothing, hands and shoes. The condition of the body had indicated Lockmer had been kicked in the head. Goodman was taken to the police station and given the *Miranda* warning. He denied any knowledge of the death of Lockmer but did say: "I can get away with murder." Goodman's clothing and shoes were taken from him and a portion of the dried blood on his hands was removed for analysis by a lab.

■ The above summarizes the evidence available to the police at the time Goodman was arrested and it is this evidence Goodman contends was insufficient to constitute probable cause for the police to arrest him without a warrant. The argument continues that since the arrest was without probable cause, then the seizure of Goodman's clothing and shoes was not incident to a lawful arrest and hence was an unlawful search and seizure contrary to the Missouri and federal constitutions. Probable cause to justify an arrest without a warrant "simply means a knowledge of facts and circumstances sufficient for a prudent person to believe the suspect is committing or has committed *an* offense. *Beck v. Ohio*, 379 U.S. 89, 91, 85 S.Ct. 223 [225], 13 L.Ed.2d 142 (1964). . . ." *State v. Heitman*, 589 S.W.2d 249, 253[3–5] (Mo. banc 1979). Goodman concedes a search incident to a lawful arrest is one of the exceptions to the requirement that a search be made only under a warrant. *Id.* It is further pointed out, *id.*, that probable cause means more than mere speculation, yet its "existence must be determined by practical considerations of everyday life on which reasonable persons act and not the hindsight of legal technicians. *Brinegar v. United States*, 338 U.S. 160, 175, 69 S.Ct. 1302 [1310], 93 L.Ed.

1879 (1949); *State v. Wiley*, 522 S.W.2d 281, 287 (Mo. banc 1975)."

■ This court concludes that the officers had reasonable cause to believe that Goodman had participated in the death of Lockmer. The police knew from their encounters with Goodman during the previous night that much of the night he had been in the immediate area where the body was found, except for the time he was seen at 17th and Indiana. A paper sack with Goodman's name hand lettered on it was found near the body, and Goodman had a paper sack when removed from the tavern in the immediate area. The head of Lockmer was covered with blood and blood had formed a pool and had run a short distance from the body so the police knew this was a particularly bloody killing. Goodman was in the immediate area shortly before the body was discovered with blood on his hands and clothing. When arrested later, the officers observed blood, not only on his hands and clothing, but on his shoes. These facts and circumstances were sufficient to give the officers probable cause to arrest Goodman without a warrant and the seizure of his clothing and shoes was, therefore, incident to a lawful arrest. See *Commonwealth v. Perez*, 357 Mass. 290, 258 N.E.2d 1 (1970).

Goodman's clothing and shoes and the dried blood taken from his hands were sent to the Regionalistics Laboratory. Ed Covey, the chief chemist of the Laboratory, testified that he made tests on the blood found on the hands, clothing and shoes. He stated the blood found on both shoes taken from Goodman revealed group A, P.G.M. 2–1, E.A.P. –B.A., and haptaglobin 2–2. Covey stated the frequency in which these four factors were found in a blood sample would be about 2.2% of the population. He said a test of Lockmer's blood revealed the same four factors. The blood sample removed from Goodman's hands was tested by Covey, but the quantity of the sample was only sufficient to test for the first two factors. These were group A with a P.G.M. of 2–1, the same first two factors as found in Lockmer's blood and the blood found on Goodman's shoes. Covey testified that

Goodman's blood was Type O, which meant the blood on Goodman's shoes and hands was not his own. The blood on Goodman's clothing did not match either Goodman or Lockmer's blood type.

Covey also found hairs on Goodman's shoes. These hairs matched hair samples taken from Lockmer's beard but did not match hair samples taken from his head. Covey testified the hairs found on Goodman's shoes, which matched the beard samples from Lockmer, had the root structure intact which indicated the hairs on the shoes had been forcibly removed from Lockmer's beard as opposed to a normal expulsion of hair.

Dr. Peterson, the medical examiner, testified that she had conducted an autopsy on the body of Lockmer. She described the injuries to the head as being principally about the face, which included a fracture of the jaw with dislodgement of some of the teeth. She described the injuries to the face as being a split down the center of the nose extending to the forehead; a splitting of the upper and lower lip extending onto the chin; bruising around the eye with laceration of the eyelid of the right eye. Internally there was a large amount of blood resulting from a hemorrhage on the surface of the brain, but there was no skull fracture. There was also a fracture of the left second rib and the left eighth rib with hemorrhage in the chest cavity. There was a laceration of the left leaf of the diaphragm. Dr. Peterson stated her opinion that the injuries had been inflicted by a blunt force, as opposed to a sharp instrument, and that a foot would qualify as the blunt force. Dr. Peterson gave the cause of death as the head injury with hemorrhage on the surface of the brain. Dr. Peterson gave her opinion as to the time of death to be between 3:45 A.M. and 6:00 A.M.

A fingerprint expert testified that he found Goodman's fingerprints on the cigarette package within the plastic holder found near the body.

■ In considering Goodman's contention that the evidence was insufficient to sustain the conviction, it is necessary to recall that:

"First, the facts in evidence and all favorable inferences reasonably to be drawn therefrom must be considered in the light most favorable to the state and all evidence and inferences to the contrary must be disregarded.... Second, when the state's case rests upon circumstantial evidence, 'the facts and circumstances must be consistent with each other and with the hypothesis of defendant's guilt, and they must be inconsistent with his innocence and exclude every reasonable hypothesis of his innocence.' *State v. Ramsey*, 368 S.W.2d 413, 416 (Mo.1963)." *State v. Franco*, 544 S.W.2d 533, 534[1–4] (Mo. banc 1976).

■ Considering the evidence in this case in the light of the applicable rules, this court concludes the evidence was sufficient to sustain the conviction. The presence of Goodman in the immediate area where the body was found much of the previous night was well established by the police officers who removed him from the two taverns and the bartender. His presence at the scene can be inferred from the paper sack and the cigarettes. The presence of blood matching Lockmer's blood on his hands and shoes and the presence of beard hairs matching Lockmer's on Goodman's shoes, when death was caused by blows to the bearded head by a blunt instrument such as shoes, lead to an inference that Goodman's shoes came in contact with Lockmer's face and head. The beard hairs on the shoes were removed by force, perfectly consistent with blows to the head of such force to fracture the jaw, dislodge teeth and produce a fatal brain hemorrhage. The injuries were such as to exclude accident or misadventure and point to intentional conduct. All of this evidence was consistent with a hypothesis of guilt and excluded every reasonable hypothesis of innocence.

■ Goodman finally complains of the admission of a single picture showing Lockmer's head as it appeared when he was first found. He contends the picture is so gruesome that its probative value is outweighed by the prejudicial effect which it must have had on the jury. The factors to be considered to determine admissibility of photographs of dead bodies is set out in *State v.*

*Sempsrott*, 587 S.W.2d 630, 633–4[1–4] (Mo. App.1979). These include whether or not the picture shows the location and nature of the wounds and tends to show the state of mind of the defendant and to explain or clarify the testimony of a witness. Dr. Peterson was shown the picture and stated that it did aid her in explaining the injuries to the jury. This court has examined the picture and finds that while the picture is termed gruesome, nevertheless it does show the location and nature of the wounds to the head which Dr. Peterson stated was the cause of death. The picture shows that it would be probable that beard hairs would adhere to the instrument inflicting the wounds. The picture further leaves no doubt the injuries were intentionally inflicted. The nature and extent of the wounds could not be fully appreciated by the jury without seeing the picture. This court concludes that the probative value of the photograph was substantial and this value was not outweighed by the prejudice which Goodman claims. *State v. Higgins*, 592 S.W.2d 151, 162[22, 23] (Mo. banc 1979).

The judgment is affirmed.

All concur.