STATE of Missouri,
Plaintiff-Respondent,

v.

Steven Gail DANIELS,
Defendant-Appellant.

No. 12586.

Missouri Court of Appeals,
Southern District,
Division Three.

March 31, 1983.

John D. Ashcroft, Atty. Gen., Janet E. Papageorge, John Jacobs, Asst. Attys. Gen., Jefferson City, for plaintiff-respondent.

Peter N. Sterling, Public Defender, Rolla, for defendant-appellant.

GREENE, Chief Judge.

Defendant, Steven Gail Daniels, was charged, jury-tried and convicted of the crime of second degree murder. The trial court sentenced him to 50 years' imprisonment in accordance with the jury verdict.

On appeal, Daniels first contends that the trial court erred in submitting the second degree murder charge to the jury because the admissible evidence did not support a finding that he acted without provocation in killing Terry Bartle. In this connection, Daniels charges that evidence showing he was angry at Bartle because Bartle had accused him of attempted stealing should have been excluded because it was irrelevant.

■ In reviewing a claim of insufficient evidence, we view the evidence supporting the guilty verdict and the reasonable inferences to be drawn therefrom as true, and disregard all evidence to the contrary. *State v. Reed,* 453 S.W.2d 946 (Mo.1970). The evidence was that on November 12, 1980, Terry Bartle, by a complaint, caused Daniels to be arrested and taken to jail for allegedly attempting to break into a vehicle belonging to the J.B. Implement Company, which was the Bartle family business.[1] Terry Bartle and his father had seen Daniels near the vehicle and Terry had evidently detained Daniels at gunpoint until the sheriff arrived.

■ This incident angered Daniels. A few days prior to December 26, Daniels discussed the Bartle incident at a pool hall in Rolla, Missouri, with an acquaintance named Martin Light. At approximately 11:30 p.m. on December 26, Daniels went to the Image Lounge, where he saw Light. Daniels asked Light if he had seen Bartle. Light told Daniels he did not know Terry Bartle. Daniels then said, "I'm going to get that little son-of-a-bitch." Bartle was in the lounge, and was dancing with his fiancée, Brenda Braidlow. Daniels approached Bartle, was yelling and pointing at Bartle, and pushed Bartle. An argument between the two men commenced in which "Terry said he should have shot him or blown his head off the night that he caught him out at the shop, and Daniels replied, well, yes, you should have, because before

it's over with, you are going to pay for it." A fist fight then developed between the two men, which was broken up by onlookers. Brenda and Terry moved toward a table away from the dance floor, but were followed by Daniels.

The argument continued. Daniels and Bartle went outside and the fist fight resumed. Bartle was unarmed. Daniels pulled a sheath knife from his pocket and stabbed Bartle in the left chest. The knife wound penetrated Bartle's heart, and he bled to death as a result. Daniels ran from the scene. Later, near the location of Fourth and Olive Streets in Rolla, Daniels told some friends that he had to get rid of a knife. Rolla police later searched the area near that location and found two knives. The larger of the two knives was in a sheath and was blood-stained. Daniels later admitted the knife was his.

Whether Daniels was provoked into killing Bartle was a jury question. The evidence was sufficient for the jury to find Daniels guilty of second degree murder as submitted in the state's verdict directing instruction on that crime. Defendant's first point is denied.

Daniels' final point relied on is that the trial court erred by sustaining the state's objection to defense counsel's cross-examination question of state's witness Jackie Wilson as to whether she received tips from Terry Bartle's friends at the cocktail lounge where the homicide occurred. Defendant contends this limited his ability to show bias against him on the part of the witness.

Jackie Wilson was a waitress at the Image Lounge. In her testimony in chief she said that she saw Daniels stab Bartle with a hunting knife. On cross-examination, the following exchange occurred:

"Q. Did you make the statement somewhere that Steve Daniels' party hadn't tipped you very well?

A. Yes, I believe I did.

Q. They were kind of, didn't tip you very well on the money, did they?

---

1. Defendant contends this evidence should have been excluded because it was irrelevant. This contention has no merit, as subsequent evidence shows that this incident angered Daniels, and was relevant and material, to show defendant's motive for attacking Bartle, and his state of mind while doing so. *State v. Holt,* 592 S.W.2d 759, 775 (Mo. banc 1980).

A. Well, I don't hold that against any-body."

Later in the examination, this exchange occurred:

"Q. Did you get tipped by the Bartle party?

MR. BERGER: I object. That is kind of irrelevant, Judge.

THE COURT: Sustained.

MR. ELLIOTT: Bias, Your Honor.

THE COURT: The Court has ruled. Proceed.

MR. ELLIOTT: But you didn't get tipped by the Daniels' party?

A. That is right."

■ The extent of cross-examination on collateral matters for the purpose of impeachment is largely within the trial court's discretion. *State v. Franco,* 544 S.W.2d 533, 537 (Mo. banc 1977). Absent a clear showing of an abuse of discretion by the trial court in restricting cross-examination, its ruling will not be disturbed. *State v. Roesel,* 574 S.W.2d 944, 946 (Mo.App. 1978). We find no such clear showing here. Assuming that Jackie's answer to the aborted question had been that the Bartle party was big tippers, we fail to see how that answer would have tipped the scales in favor of Daniels. The jury knew that the witness had not been tipped by Daniels or his friends. The witness stated that fact had no bearing on her testimony. The jury had the right to determine if it did or did not. We do not see how additional testimony that the "Bartle party", whoever they might have been, did tip her would have added any material fact for the jury's consideration. In addition, even assuming it was error for the trial court to limit cross-examination on the matter in question, defendant has not explained in his brief, and we know of no reason, how he was prejudiced thereby. The point is denied.

Judgment affirmed.

CROW, P.J., and FLANIGAN, MAUS and PREWITT, JJ., concur.