**STATE of Missouri, Respondent,**

v.

**Vernon HUBBARD, Appellant.**

**No. WD 36085.**

Missouri Court of Appeals,
Western District.

Sept. 10, 1985.

Motion for Rehearing and/or Transfer to
Supreme Court Overruled and
Denied Oct. 22, 1985.

Application to Transfer Denied
Nov. 21, 1985.

Richard E. McFadin and F.A. White, Jr., of McFadin and White, North Kansas City, for appellant.

William L. Webster, Atty. Gen., and T. Chad Farris, Asst. Atty. Gen., Jefferson City, for respondent.

Before MANFORD, P.J., and PRITCH-ARD, and LOWENSTEIN, JJ.

MANFORD, Presiding Judge.

This is a direct appeal from a jury conviction. Judgment and sentence were entered. The judgment is affirmed.

Appellant presents three points, which in summary charge that the trial court erred (1) in submitting the cause to the jury, because the evidence was insufficient, (2) in submitting the verdict-directing instruction, and (3) assuming there was sufficient evidence to submit the cause to the jury, then in not submitting MAI–CR2d 2.10 in conjunction with the aider/abettor instruction which was submitted.

Since appellant challenges the sufficiency of the evidence, a detailed account of pertinent facts must be set forth. Prior to a detailed account of these facts, it must be noted that two charges of arson were filed against appellant and with appellant's consent, the cases were consolidated for trial. In addition, appellant had been previously tried on these charges, but that proceeding ended in a mistrial.

The record discloses the following facts:

Lisa Word and Roger Neill had been dating during the summer of 1981 and Roger had given Lisa a "promise ring." At that time Lisa had been living with her mother, Carolyn Cameron, her mother's husband, James Cameron, and her siblings at 2510 South 16th Street, St. Joseph, Missouri. On July 29, 1981, Lisa returned to her home from a date with Roger. Lisa went upstairs to her bedroom and went to sleep. Mrs. Cameron stayed awake in her downstairs bedroom reading a book, until she turned out the light and began to doze off sometime between 12:30 a.m. and 1:30 a.m. on the morning of July 30. (Mr. Cameron was not at home but all of the children were at home, asleep.)

At approximately 1:30 a.m. on July 30, Mrs. Cameron was aroused from her "semiconscious half-sleep" state by the sound of breaking glass. When she left her bedroom she discovered a fire in the living room, which is located in the front of the house. She then gathered the children and led them outside. No one was injured.

The St. Joseph Fire Department arrived and extinguished the fire. Patrick Kelley, fire inspector for the St. Joseph Fire Department, conducted an investigation at approximately 8:30 a.m. on the morning of the 30th. He testified that in his opinion, the front window of the living room had been broken from the outside in, and that the fire originated in the middle of the living room. He testified that, in his opinion, the fire was unnatural and was caused by an accelerant. (Mr. Kelley based this opinion from the charring pattern made by the fire.) No samples were taken or tests made to determine what type of accelerant might have started the fire. Mr. Kelley testified that the house sustained fire and smoke damage downstairs, and smoke damage upstairs.

During August, 1981, Lisa Word received a typewritten letter, postmarked August 21, 1981, St. Joseph, Missouri. The author of the letter claimed that Roger Neill had been involved in a homosexual relationship with a man named Vernon (appellant's name is Vernon), and that he/she (the author) loved Roger and had run Vernon out of town. The author implied that he/she (the author) was responsible for the fire at the Cameron household and warned Lisa that if she did not stop seeing Roger there would be "deadly results."

Lisa received several other threatening letters, apparently from the author of the first letter, all of which were turned over by Mr. and/or Mrs. Cameron to the St. Joseph Police Department.

Richard Willett, an expert in fingerprint analysis employed by the Federal Bureau of Investigation (F.B.I.), testified that appellant's fingerprint matched a latent print lifted from the letter sent to Lisa Word, postmarked August 21. Lisa Word testified that she did not know the appellant at that time. The appellant testified that he did not know Lisa Word at that time and that he had never sent, caused to be sent, seen, nor touched any letters sent to Lisa Word.

During the summer of 1981, Roger Neill lived at 904 Sacramento, St. Joseph, Missouri, with his mother, Letta Neill, his father, Clifton Neill, and his siblings.

Laura Neill, Roger's sister, was employed at the Pony Express Restaurant in Elwood, Kansas, of which appellant was part-owner. On August 1, 1981, Laura was scheduled to work from 3:00 p.m. until 11:00 p.m. Laura did not have a ride to work so the appellant picked her up at her house and took her to work. (Appellant had given Laura rides to and from work on other occasions.)

Laura testified, as did appellant, that it was necessary that every employee who timed in and out have his or her timecard initialed by one of the restaurant's supervisors each time they worked. Laura testified that she saw appellant initial her timecard at the restaurant sometime during her shift on August 1, 1981. The State produced Laura's timecard from the Pony Express Restaurant for the weeks of 7/31/81—8/14/81. The entry for August 1, 1981, indicated the times 3:15 p.m. to 11:00 p.m. and the initials "V.H." appeared near that entry.

Laura testified that she worked until 11:00 p.m. and that appellant took her home. (Mrs. Neill testified that she saw the appellant drop Laura off in front of her house at approximately 11:30 p.m.) Laura thereafter went inside, spoke with her mother and eventually went to bed in her bedroom which was located on the first floor off of the living room. The other members of the household were sleeping. Roger and his brother Stephen were sleeping in the living room.

At approximately 1:30 a.m., August 2, Laura was awakened by the sound of breaking glass and she jumped up and yelled "fire." The rest of the family was awakened and discovered a fire in the middle of the living room. After three attempts, Roger and his father extinguished the fire. No one was injured.

Dennis Gasper, detective for the St. Joseph Police Department, arrived at 904 Sacramento on August 2, at approximately 1:30 a.m. to investigate the fire, and upon entering the living room he discovered a broken picture window (broken from the outside in), smoke damage to the entire living room, and burnt carpeting in front of the picture window. In the middle of the burnt spot, Mr. Gasper found a broken bottle with a Pine-Sol label on it, and the bottle smelled of a flammable liquid. No tests were taken to determine what type of accelerant might have started the fire, nor was any test done to determine whether there were any latent fingerprints on the bottle. (The St. Joseph Police Department did not have the facilities to lift prints off the charred bottle, however, the F.B.I. had such facilities.)

Appellant testified that early in the evening of August 1 he and a date, Sharon West, were at a festival (appellant's parents testified that they saw appellant and his date at the festival until 10:30 p.m.),

and that he did not recall returning to the Pony Express Restaurant after the festival, or initialing Laura Neill's timecard, or driving Laura home but that it was possible that he did.

Appellant also testified that he and Ms. West met with some friends at the Ground Round Restaurant in St. Joseph at approximately 11:30 p.m., that at approximately 12:10 a.m., August 2, appellant was involved in an altercation outside of the Ground Round, that immediately after the altercation appellant took his date to her home and immediately returned to his apartment and went to bed.

During August (around the 22nd) Roger Neill received a typewritten letter, postmarked August 21, 1981, St. Joseph, Missouri. (A document expert later testified that, in his opinion, the letter to Lisa Word, postmarked August 21, and the letter to Roger Neill, postmarked August 21, were typed on the same typewriter.) The author of the letter claimed that he/she (the author) destroyed Vernon, that he/she (the author) was in love with Roger, and implied that he/she (the author) was responsible for the fire at the Neill household.

Roger received several other letters of similar nature, all of which were apparently from the author of the letter he had received postmarked August 21. Every such letter received by Roger (or the Neills) were taken by Mrs. Neill to the St. Joseph Police Department.

Richard Willett, an expert in fingerprint analysis employed by the F.B.I., testified that appellant's fingerprints matched latent prints lifted from the letter received by Roger Neill, postmarked August 21. Mrs. Neill testified that she was aware that Roger and the appellant were friends, but did not know of any homosexual relationship between them. Appellant, upon cross examination, was asked if in a prior proceeding (his first trial) he had testified that he never touched the letter or any other letters sent to Roger Neill. In this proceeding, appellant stated he did not remember his previous answer. In the present case, appellant stated that he did not know whether he ever touched the letter.

The appellant testified that on August 2 he went to the Pony Express Restaurant sometime during the day, that he thereafter left the restaurant and returned to his apartment, that Sharon West met him at his apartment, that the two went to the home of Rev. Leroy Nash, and that Rev. Nash took the appellant and Ms. West to the Greyhound bus station in Kansas City. Appellant testified that he and Ms. West left Kansas City on August 2 on a Greyhound bus at approximately 5:30 p.m. and travelled to the state of Colorado. Appellant testified that he stayed in Colorado until he returned to Kansas City on August 24; that his parents picked him up from the Greyhound bus station in Kansas City at approximately 5:30 (not clear whether this is a.m. or p.m.), and that they returned to the appellant's parents' home at 214 West Dolman, St. Joseph, were he stayed with his parents and siblings.

Appellant testified that he was sleeping at 214 West Dolman on the morning of August 31, 1981, when he was awakened at approximately 3:00 a.m. by the sound of breaking glass, that appellant jumped up and discovered that the hairpiece he was wearing at that time was on fire. Appellant testified that he started screaming, that while he was trying to rescue other family members he again heard the sound of breaking glass and heard "another rupture of fire." As a result of the fire, appellant testified, he was hospitalized for approximately one week with burns and smoke inhalation, and the residence of 214 West Dolman suffered fire damage to the extent that it was "a total loss." Appellant testified that following his release from the hospital he was incarcerated in the Buchanan County Jail from September 11, 1981 until August 7, 1982, when he was transferred to another jail in Savannah, Missouri until November 23, 1982.

Appellant's point (1) is before this court, charging that it was error for the trial court to have submitted the cause to the jury. Appellant contends that the trial court sua sponte should have withdrawn the case from the jury because the evidence was insufficient.

In review, this court must determine if there was sufficient evidence introduced by the prosecution from which a rational trier of fact could conclude that every element of the crime charged was established beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 313, 99 S.Ct. 2781, 2785–86, 61 L.Ed.2d 560 (1979). In order for a conviction of the Class B felony of arson to be sustained, the trier of fact (jury herein) must have found beyond a reasonable doubt that (1) the accused knowingly damaged an inhabitable structure consisting of a residence at a specified location, (2) the accused did so when persons were present, (3) the accused damaged the inhabitable structure by starting a fire, and (4) the accused thereby recklessly placed persons in danger of death or serious physical injury. See MAI–CR2d 23.06.

Upon the record in the instant case, the evidence goes unquestioned that the locations of the fire were inhabitable structures and at the time of the fires, persons occupied and were present in the structure. Appellant's assertion on this appeal is that there was not sufficient evidence to submit to the jury that he (appellant) knowingly damaged an inhabitable structure consisting of a residence. In addition, appellant asserts that the evidence revealed no proof other than two unexplained fires. As to this latter assertion, appellant is correct in his contention that there arises a presumption that a fire is a result of natural causes or accident, or at least it is not of a criminal origin if the proof of the fire establishes nothing more than an unexplained fire. Appellant's reliance upon that rule is misplaced herein, however, in light of the evidence introduced. The evidence herein revealed that both fires were caused by some sort of accelerant and that this accelerant entered both structures through the glass in windows from the outside. Thus, the evidence clearly moves the instant case from those situations involving "unexplained fires." The evidence is uncontradicted that persons were present and that such actions recklessly placed persons in danger of death or serious physical injury.

This case obviously rested upon circumstantial evidence. In support of his assertion that the evidence was insufficient to establish that he knowingly damaged an inhabitable structure consisting of a residence appellant not only points out the state's case was circumstantial, but further asserts that the evidence created no more than a mere suspicion of guilt and thus under the rule announced in *State v. Siraguso*, 610 S.W.2d 338 (Mo.App.1980), the cause never should have been submitted to the jury. It is noted that while *Siraguso* is often cited for the rule regarding circumstantial evidence, it is not the state's burden to prove "conclusively" the guilt or to determine the "impossibility of the innocence of the accused." *State v. Anderson*, 671 S.W.2d 383, 384 (Mo.App.1984).

Herein a critical portion of the state's evidence was the appellant's fingerprints found upon the letters sent to Lisa Word and Roger Neill. The letters, of course, acknowledge the author's admission of responsibility for the fires. The letters and appellant's fingerprints thereon provided a link between appellant and the fires. The record shows that initially, appellant denied ever seeing, writing, forwarding, or touching the letters. Subsequently, he testified that he could not recall if he ever touched the letters. The fact remains that appellant's fingerprints were discovered upon the letters. This was evidence sufficient to submit the cause to the jury as it provided evidence to warrant submission to the jury that appellant knowingly damaged an inhabitable structure consisting of a residence. In other words, it was evidence sufficient to warrant submission because it provided the remaining element necessary to sustain a conviction of a Class B felony of arson.

It is appellant's contention that his fingerprints could have been placed upon the letters at various times and in various ways. He concludes from that assertion that the presence of his fingerprints merely raises a suspicion and thus under *Siraguso*, that is insufficient. Contrary to appellant's assertion, however, the jury herein

could have, from that fingerprint evidence, concluded that the evidence ruled out any reasonable possibility that appellant's fingerprints were put upon the letters at any time other than when they were prepared or sent and that appellant had prepared and forwarded the letters which admitted and even claimed responsibility for the fires. For analogous cases involving presence of fingerprints wherein such evidence was held sufficient, see *State v. Thomas*, 452 S.W.2d 160 (Mo.1970), *State v. Schleicher*, 442 S.W.2d 19 (Mo.1969), *State v. Maxie*, 513 S.W.2d 338 (Mo.1974), *State v. Stewart*, 615 S.W.2d 600 (Mo.App.1981), and *State v. Owsley*, 643 S.W.2d 78 (Mo. App.1982). When the evidence herein is weighed in favor of the verdict, as it must be under the rule announced in *State v. Franco*, 544 S.W.2d 533 (Mo. banc 1976), it cannot be concluded the evidence herein raised a mere suspicion and thus was insufficient to submit the cause to the jury. In fact, quite the contrary is supported by the evidence as a whole and with the appellant's fingerprints being a specific element of proof, which alone would have supported submission.

There was no error, in the trial court's having submitted this cause to the jury. The evidence was sufficient to support that submission. Appellant's point (1) is meritless and is thus ruled against him.

Under his point (2), appellant contends that the trial court erred in submitting the verdict-directing instructions, because said instructions refer to the jury's convicting appellant if he "or another person" was involved in the arson. He further asserts that the giving of these instructions placed a greater burden upon him in that they allowed the state to charge him as a principal and then later allowed the state to introduce evidence to show he aided and abetted in the commission of the offense. The challenged instructions read as follows:

### INSTRUCTION NO. 6

As to Count I, if you find and believe from the evidence beyond a reasonable doubt:

First, that on July 30, 1981, in the County of Buchanan, State of Missouri, the defendant or another person knowingly damaged an inhabitable structure consisting of a residence located at 2510 South 16th Street, St. Joseph, Missouri, and

Second, that the defendant or another person did so when persons were then present, and

Third, that defendant or another person damaged such inhabitable structure by starting a fire, and

Fourth, that the defendant or another person thereby recklessly placed such persons in danger of death or serious physical injury,
then you are instructed that the offense of arson in the first degree has occurred, and if you further find and believe from the evidence beyond a reasonable doubt:

Fifth, that with the purpose of promoting or furthering the commission of arson in the first degree, the defendant aided or encouraged another person in committing that offense,
then you will find the defendant guilty of arson in the first degree.

However, if you do not find and believe from the evidence beyond a reasonable doubt each and all of the propositions submitted in this instruction, you must find the defendant not guilty of that offense.

### INSTRUCTION NO. 7

As to Count II, if you find and believe from the evidence beyond a reasonable doubt:

First, that on August 2, 1981, in the County of Buchanan, State of Missouri, the defendant or another person knowingly damaged an inhabitable structure consisting of a residence located at 904 Sacramento, St. Joseph, Missouri, and

Second, that the defendant or another person did so when persons were then present, and

Third, that defendant or another person damaged such inhabitable structure by starting a fire, and

Fourth, that the defendant or another person thereby recklessly placed such persons in danger of death or serious physical injury,

then you are instructed that the offense of arson in the first degree has occurred, and if you further find and believe from the evidence beyond a reasonable doubt:

Fifth, that with the purpose of promoting or furthering the commission of arson in the first degree, the defendant aided or encouraged another person in committing that offense,

then you will find the defendant guilty of arson in the first degree.

However, if you do not find and believe from the evidence beyond a reasonable doubt each and all of the propositions submitted in this instruction, you must find the defendant not guilty of that offense.

Appellant obviously argues a fatal variance between the charges in the information and the elements set forth in the above instructions. The informations read as follows:

... MICHAEL A. INSCO, Prosecuting Attorney within and for Buchanan County, in the State of Missouri, upon information and belief and upon his official oath, charges that the defendant VERNON E. HUBBARD, in violation of Section 569.040, RSMo, committed the class B felony of arson in the first degree, punishable upon conviction under Section 558.011.1(2), RSMo, in that on or about the 30th day of July, 1981, in the County of Buchanan, State of Missouri, the defendant knowingly damaged an inhabitable structure consisting of a residence located at 2510 South 16th, St. Joseph, Buchanan County, Missouri, and defendant did so at a time when persons were then present, by starting a fire and thereby recklessly placed such persons in danger of death or serious physical injury.

... HERSHEL D. SHEPHERD, FIRST ASSIST. Prosecuting Attorney within and for Buchanan County, in the State of Missouri, upon information and belief and upon his official oath, charges that the defendant VERNON HUBBARD, in violation of Section 569.040, RSMo, committed the class B felony of arson in the first degree, punishable upon conviction under Section 558.011.1(2), RSMo, in that on or about the 2nd day of August, 1981, in the County of Buchanan, State of Missouri, the defendant knowingly damaged an inhabitable structure consisting of a residence, located at 904 Sacramento, St. Joseph, Missouri, and defendant did so at a time when persons were present by starting a fire and thereby recklessly placed such persons in danger of death or serious physical injury.

Defendant is a prior offender, punishable upon a finding of guilty by the Court under Sections 558.016, RSMo, in that he has been previously convicted of a felony committed at a different time and not related to the instant crime as a single criminal episode, said previous conviction being as follows:

1. On or about the 12th day of March, 1980, defendant was convicted of the felony of passing bad checks in the Circuit Court of Buchanan County, Missouri.

■ A comparison of the above informations with the verdict-directors fails to disclose any variance between information and instruction by which the instruction submitted a new distinct offense from that which appellant was charged. In order for a variance to be fatal, the instruction must have submitted a new, separate and distinct offense, and obviously that did not occur. See *State v. Price*, 684 S.W.2d 566, 567 (Mo.App.1984), citing *State v. Coleman*, 660 S.W.2d 201, 218 (Mo.App.1983). The present case is closely analogous to *Price* where the court ruled that the accused was responsible, whether he was a principal or an aider/abettor, so long as he made "an affirmative advancement of criminal enterprise." The court concluded that regardless of the accused's status as principal or aider/abettor, the instruction did not charge the accused with a new and distinct offense. The same applies herein. There was no fatal variance between the informations and the instructions. *Price, supra,*

also is authority which allows the modification of verdict-directing instructions so as to apply to varied factual situations disclosed by the evidence on a per case basis.

■ Appellant's general assertion that deviation from MAI–CR2d constitutes error does not alone suffice. It is true that deviation from MAI–CR2d constitutes error, *but* the prejudicial effect is to be judicially determined. Rule 28.02(e). The informations herein sufficiently notified appellant of the charges against him. The evidence upon the record is unclear whether appellant acted entirely alone or was aided by someone else. However, the evidence does reveal appellant's having committed the elements of the offense. The instructions did not submit a new, separate and distinct crime. *Price, supra.* Appellant suffered no prejudice. Appellant's point (2) is meritless and is thus ruled against him.

Under his final point (3), appellant asserts that if the evidence was sufficient to submit the cause to the jury, he was then entitled to, and the trial court erred in its failure to, submit (in conjunction with the above verdict-directing instructions) MAI–CR2d 2.10.

■ It is first noted that appellant's reference to MAI–CR2d 2.10 does not apply, as MAI–CR2d 2.10 was repealed effective January 1, 1983, which was prior to appellant's being tried for these offenses. The issue raised by appellant's final point three is thus taken up and considered with reference to MAI–CR2d 2.12.[1]

■ As noted above, the evidence herein is not clear whether appellant acted entirely alone, but the evidence is sufficient to show that appellant committed the elements of the offense. Under the facts and circumstances, it was not mandatory that MAI–CR2d 2.12 be submitted to the jury.[2]

It is further noted that by the proper modification of the verdict-directing instructions, appellant herein received the benefit of MAI–CR2d 2.12. There is no merit to appellant's final point 3.

Judgment affirmed.

All concur.

---

1. See Notes on Use MAI–CR2d 2.12 (Note 1) as to the applicability of MAI–CR2d to the instant proceedings.

2. See Note 4, Notes on Use, MAI–CR2d 2.12.